525 A.2d 801

**In re Adoption by Eric G. SHIVES and Linda S. Shives.**

**Appeal of Harry G. PECK, Father of Alan G. Peck.**

Superior Court of Pennsylvania.

Argued Feb. 19, 1987.

Filed May 12, 1987.

226

Dewayne T. Newman, Everett, for appellant.

James M. Schall, McConnellsburg, for Shives, appellees.

Before WIEAND, OLSZEWSKI and TAMILIA, JJ.

WIEAND, Judge:

This is an appeal from an order which, at the request of a divorced mother, terminated the parental rights of the natural father, thus making it possible for the mother's second husband to adopt the child.

Linda S. Shives, mother and appellee herein, and Harry G. Peck, father-appellant, were divorced in 1983. Alan Peck, who had been born of the marriage on September 27, 1980, resided with his mother, to whom custody had been awarded as part of the divorce decree. An agreement between the parties provided that Harry Peck could visit his son only at the mother's residence until Alan attained the age of five years. In May, 1984, Linda married Eric Shives, and the new marriage partners, together with Alan, took up residence in Harrisonville, Fulton County, Pennsylvania. Father continued to pay support for his son, in the amount of thirty-three ($33) dollars per month, until April 19, 1985, when mother declined to accept further support.[1] However, father has had no personal or physical contact with his son since September 27, 1983, the date of Alan's third birthday.

On November 21, 1985, mother filed a petition, pursuant to the Adoption Act, 23 Pa.C.S. § 2101 et seq., to terminate involuntarily father's parental rights.[2] A hearing was held on January 1, 1986, at which time the Orphans' Court determined that for a period of six (6) months father had failed to perform parental duties and had evidenced a settled purpose to relinquish his parental claim to Alan. The court's decision to terminate involuntarily father's parental rights was based upon a finding that the father had failed to make reasonable efforts either to contact his son or to maintain a parent-child relationship for a period in excess of that provided by the statute. From the order

1. The record demonstrates that the support order pursuant to which father paid support was terminated at mother's request; however, father continued to pay support for some time thereafter. Upon mother's continued declination of support and due to financial difficulties, father eventually ceased making support payments.

2. Eric Shives filed a petition to adopt Alan upon the termination of father's parental rights.

terminating his parental rights, father appealed.[3] His principal arguments are that (1) mother-appellee acted by design to prevent his maintaining a relationship with his son in order to effect a termination of his parental rights; and (2) the absence of visitation, in view of the continued support which he contributed to his son, did not alone warrant a termination of his parental rights.

Parental rights may be terminated if a "parent by conduct continuing for a period of at least six months either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties." 23 Pa.C.S. § 2511(a)(1). A "court in terminating the rights of a parent shall give primary consideration to the needs and welfare of the child." 23 Pa.C.S. § 2511(b).

■ Parental rights may not be terminated in the absence of evidence which is clear and convincing. *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). See: *In re T.R.*, 502 Pa. 165, 166, 465 A.2d 642, 642–643 (1983); *In re K.L.P.*, 354 Pa.Super. 241, 246, 511 A.2d 852, 854 (1986); *In re Adoption of Hutchins*, 326 Pa.Super. 276, 279, 473 A.2d 1089, 1091 (1984); *In re Adoption of Sabrina*, 325 Pa.Super. 17, 22, 472 A.2d 624, 626 (1984); *In re Adoption of Ostrowski*, 324 Pa.Super. 216, 218–219, 471 A.2d 541, 542 (1984); 25 Std.Pa.Prac.2d § 126:598. This principle requires evidence which is "so clear, direct, weighty, and convincing as to enable the [factfinder] to come to a clear conviction without hesitancy, of the truth of the precise facts in issue." *In re Adoption of James J.*, 332 Pa.Super. 486, 493, 481 A.2d 892, 896 (1984).

Our scope of review in a termination case is limited to a determination of whether the decision to terminate is supported by competent evidence. *In re Adoption of Faith M.*, 509 Pa. 238, 240, 501 A.2d 1105, 1106 (1985); *In re Adoption of N.A.G.*, 324 Pa.Super. 345, 348, 471 A.2d 871, 873 (1984). Absent an abuse of discretion, an error of law or

---

3. Mother filed a petition to dismiss the appeal on April 14, 1986, contending that as no post-trial motions had been filed, all issues were waived. That petition was denied on August 28, 1986.

insufficient evidentiary support for the findings of the Orphans' Court, an appellate court will not reverse a hearing court's order to terminate. *In re Adoption of G.T.M.*, 506 Pa. 44, 46, 483 A.2d 1355, 1356 (1984); *In re Stickler*, 356 Pa.Super. 56, 58, 514 A.2d 140, 141 (1986); *In re Baby Boy Allen*, 337 Pa.Super. 133, 135, 486 A.2d 517, 518 (1984); *Lookabill v. Moreland*, 336 Pa.Super. 520, 523, 485 A.2d 1204, 1205 (1984).

■ In *In re Burns*, 474 Pa. 615, 379 A.2d 535 (1977), the Supreme Court stated:

There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.

This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent 'exert himself to take and maintain a place of importance in the child's life'.

*Id.*, 474 Pa. at 624–625, 379 A.2d at 540 (citations omitted). *In re Stickler, supra*, 356 Pa.Superior Ct. at 59–60, 514 A.2d at 142; *In re Adoption of Baby Boy J.*, 354 Pa.Super. 575, 579, 512 A.2d 689, 692 (1986); *In re Adoption of Hutchins, supra; In re Adoption of N.A.G., supra* 324 Pa.Super. at 349, 471 A.2d at 874; 25 Std.Pa.Prac.2d § 126:599. Therefore, it is not enough to contribute to the support of a child as required by court order. A parent is required to exert a sincere and genuine effort to maintain a parent-child relationship; the parent must use all available resources to preserve the parental relationship and must exercise "reasonable firmness" in resisting obstacles placed in the path of maintaining the parent-child relationship. *In*

*re J.L.Z.*, 492 Pa. 7, 10, 421 A.2d 1064, 1065 (1980); *In re Baby Boy P.*, 333 Pa.Super. 462, 469, 482 A.2d 660, 664 (1984).

■ The law recognizes, however, that there are situations in which a custodial parent has deliberately created obstacles and has by devious means erected barriers intended to impede free communication and regular association between a noncustodial parent and his or her child. Therefore, it is incumbent upon a court, before it terminates the rights of a noncustodial parent, to consider carefully the noncustodial parent's explanation, if any, for his or her apparent neglect. Only where the totality of the circumstances demonstrates clearly and convincingly that a parent has refused or failed to perform parental duties for a minimum period of six months may an order be entered terminating parental rights. *In re Santelia*, 318 Pa.Super. 413, 417, 465 A.2d 21, 23 (1983). The pertinent inquiry is not the degree of success a parent may have had in reaching the child, but whether, under the circumstances, the parent has utilized all available resources to preserve the parent-child relationship. *In re Adoption of Faith M.*, *supra* 509 Pa. at 245, 501 A.2d at 1108.

■ It is uncontroverted in the case sub judice that father did not have personal or even verbal contact with his son for a period in excess of six months. During that period, he did not write, telephone or see his son, and he did not send birthday or Christmas gifts. Although father explains that he did not know the address or telephone number of the home at which his son was residing, there is other evidence which supports the hearing court's finding that father failed to utilize available resources, such as the telephone directory, to find his son. Although father testified that he had driven around Harrisonville in the hope of seeing his son, he concedes that he did not make inquiry of persons who could have been expected to know the address at which the son was living with his mother.

Father also contends that mother created impediments intended to thwart his efforts to maintain a parental rela-

tionship with his son.   However, the trial court found that mother had not acted to impede visits by father, and that impediments otherwise arising could have been overcome by reasonable resolve.   In fact, the court found, father had acquiesced in the separate existence of his son and had waited passively for a more convenient time to perform parental duties.[4]   It was small wonder, then, that Alan did not know appellant as his father and, instead, reserved that appellation for his stepfather.

Parental rights are not preserved, it has been held, by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her immediate physical and emotional needs. See: *In re Smith's Adoption*, 412 Pa. 501, 505, 194 A.2d 919, 922 (1963); *In re Adoption of Sabrina, supra* 325 Pa.Super. at 27, 472 A.2d at 629.   Rather, a noncustodial parent must make an affirmative effort to exert himself or herself to take a place of importance in a child's life.   *In re Adoption of J.S.M., Jr.*, 492 Pa. 313, 317, 424 A.2d 878, 880 (1981).   "Parental duty does not require the impossible, but may encompass that which is difficult and demanding.   A parent may not yield to every problem, but must act affirm-atively, with good faith interest and effort, to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances."   *In re Burns, supra* 474 Pa. at 626, 379 A.2d at 541; *In re Sabrina, supra.*

It may well be, as father suggests, that the differences between divorced spouses tend to create an atmosphere which does not encourage visitations by one parent in the home of the other parent.   The record in the instant case, however, fails to disclose impediments rendering impossible, or even excessively difficult, the performance by father of those parental duties which are usually associated with a father-son relationship.   The difficulty in visiting his son was not such as would excuse father's total failure to communicate with him for more than six months while

---

4.   Although maintaining medical insurance coverage for his son under a work related plan, father did not provide mother with information essential to claiming the benefits of that insurance for Alan.

others fulfilled parental responsibilities to the boy. Father's disassociation with his son, the Orphans' Court could find, was voluntary and in default of his parental obligations. Therefore, the Orphans' Court did not abuse its discretion when it found that father had failed to perform parental responsibilities for more than six months and concluded that the best interests of the boy would be served by terminating appellant's parental rights.

Order affirmed.