641 A.2d 1213

In the Matter of ADOPTION OF Sheilia Lynette STEPP and Kathleen Diamond Stepp.

Appeal of Yvonne STEPP, Natural Mother.

In the Matter of ADOPTION OF Sheilia Lynette STEPP and Kathleen Diamond Stepp.

Appeal of Lee ROBERTS, Natural Father.

Superior Court of Pennsylvania.

Submitted April 27, 1994.

Filed May 23, 1994.

Carmen F. Lugo, Erie, for appellees.

James E. Beveridge, Erie, for CYS, participating party.

Before ROWLEY, President Judge, and CIRILLO and OLSZEWSKI, JJ.

OLSZEWSKI, Judge:

Yvonne Stepp and Lee Roberts appeal the final decree terminating their parental rights to their natural children, Sheilia and Kathleen Stepp. Although they bring separate appeals from the trial court's decree, the facts of both parents' appeals are so intertwined that we may address them together. The trial court thoroughly recounted the parents' history of involvement with the Erie County Office of Children and Youth Services (CYS) in the opinion accompanying its decree nisi of 7/13/93. Because terminating parental rights is the most drastic exercise of the state's power to act *in loco parentis*, and because such decisions are extremely fact sensitive, we note with approval the care and detail of the trial court's findings of fact. We adopt the trial court's findings, but will briefly summarize them here.

Ms. Stepp and Mr. Roberts, who are not married, have had seven children together. The eldest child, Tiawana Stepp, was born in 1978; Sheilia and Kathleen were born in 1989 and 1992, respectively. CYS began its involvement with the family in 1983, investigating charges of abuse, neglect, and use of drugs and alcohol. All of the children have been adjudicated dependent, and all have spent time in foster care. Ms. Stepp's and Mr. Roberts' parental rights have already been terminated as to their sixth child, Andrew; Sheilia is number five and Kathleen number seven.

In 1990, Ms. Stepp was arrested for prescription fraud. Shortly after leaving the Erie County prison on parole, Ms. Stepp gave birth to Andrew, who tested positive for cocaine.

Ms. Stepp entered a drug rehabilitation program, but was dismissed for noncompliance. She repeatedly tested positive for cocaine. Less than a month after being re-incarcerated for this probation violation, Ms. Stepp gave birth to Kathleen, who also showed symptoms of cocaine exposure.

During Ms. Stepp's incarceration and her attempts to participate in a drug rehabilitation program, Mr. Roberts cared for the children. The four youngest children were briefly placed in foster care while Mr. Roberts made plans to attend truck driving school in Ohio. These plans fizzled, however, and the eldest three of these four children were returned to Mr. Roberts' care. Visits by CYS showed the children to be inadequately clothed and supervised. Mr. Roberts sometimes had Tiawana stay home from school to care for Sheilia while he "attended to business." Mr. Roberts eventually moved out of the home, and all the children were placed in foster care.

Two hearings followed at which the six children, and then Kathleen upon her birth, were adjudicated dependent. Neither parent attended either hearing. Mr. Roberts did attend a later placement hearing at which he was ordered to undergo alcohol assessment and treatment. While uncooperative at first, Mr. Roberts now concedes that he has an alcohol problem, but does not consider it serious. Meanwhile, Ms. Stepp successfully completed a drug rehabilitation program. Ms. Stepp then suffered a miscarriage, which she claims caused her to resume her use of cocaine. She refused at least one urine screening, and her parole and probation were revoked. She is now apparently nearing the end of her 18–36 month sentence.

Just before her re-incarceration, Ms. Stepp failed to attend the March, 1993 hearing at which the court directed CYS to file a petition for involuntary termination of parental rights. Mr. Roberts was similarly absent, though both parents received notification. Evaluations of Sheilia and Kathleen showed them both to be developmentally delayed, and in need of physical, social, and/or language development therapy. Neither parent has demonstrated a willingness to provide for the special needs of Sheilia and Kathleen.

Another hearing was held in July of 1993 on the termination petition which the parents did attend. The lower court acknowledged the parents' sincere desire to regain custody of Sheilia and Kathleen and provide for their needs. The court, however, found clear and convincing evidence that both Sheilia and Kathleen had been removed from their parents' care and placed with CYS for at least six months, and that the conditions which led to their removal continued to exist, and would not be remedied in a reasonable period of time, despite CYS's efforts. Therefore, given the parents' history of neglect and the children's urgent need for a stable, developmentally appropriate environment, the court entered a decree nisi that Ms. Stepp's and Mr. Roberts' parental rights should be terminated pursuant to 23 Pa.C.S.A. § 2511(a)(5). Decree Nisi and Opinion, 7/13/93.

Mr. Roberts filed no exceptions to the decree nisi. Ms. Stepp filed one exception, contending only that the court erred in finding that she had missed more than one urine screening. The court accepted this correction, but since Ms. Stepp did not contest its other findings of fact, the court finalized its decree. Final Decree and Opinion, 7/22/93. These appeals followed.

> In reviewing an involuntary termination of parental rights, we must review the record to determine whether the Orphans' Court decree is supported by competent evidence. *In re Matsock*, 416 Pa.Super. 520, 611 A.2d 737, 742 (1992). We will not reverse the decision of the Orphans' Court to terminate parental rights absent an abuse of discretion, error of law, or insufficient evidentiary support for the findings of the Orphans' Court. *In re Shives*, 363 Pa.Super. 225, 228–29, 525 A.2d 801, 802 (1987).

*In re C.E.H.*, 429 Pa.Super. 304, 307, 632 A.2d 577, 578–79 (1993). Finding no abuse of discretion, we affirm the lower court's decision to terminate Ms. Stepp's and Mr. Roberts' parental rights to Sheilia and Kathleen.

■ On appeal, both parents argue that the termination decision was not supported by clear and convincing evidence. We disagree. CYS has been involved with Ms. Stepp's and Mr. Roberts' children for ten years. The lower court heard

extensive testimony on the history of CYS's intervention, and the specific problems regarding Sheilia and Kathleen. The lower court has amply documented the basis for its termination decision, and our review of the record supports its conclusions.

Mr. Roberts also argues that he has not demonstrated a deliberate intent to relinquish his parental claim to Sheilia and Kathleen. Such a settled purpose is necessary to terminate parental rights under 23 Pa.C.S.A. § 2511(a)(1), but not under subsection (a)(5). The latter standard allows for termination of parental rights when

> [t]he child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

The court specifically framed its conclusions of law in these terms. Decree Nisi Opinion, 7/13/93 at 12. Neither Mr. Roberts nor Ms. Stepp address this conclusion beyond the simple assertion that the family situation was improving somewhat, and could improve more.

Terminating parental rights is a serious remedial measure, but when the facts of a case clearly and convincingly support its use, then we should not hesitate to impose it. Unnecessary delay can only thwart Sheilia's and Kathleen's emotional and psychological development. A considerable body of social scientific evidence supports termination over letting children languish in long-term foster care—only thus can we insure that Sheilia and Kathleen are placed in a stable, nurturing environment early enough to meet their developmental needs. *See* David J. Herring, *Inclusion of the Reasonable Efforts*

*Requirement in Termination of Parental Rights Statutes: Punishing the Child for the Failures of the State Child Welfare System,* 54 U.Pitt.L.Rev. 139 (1992); *C.E.H., supra,* 429 Pa.Super. at 312, 632 A.2d at 581 (Olszewski, J. concurring). The lower court's decision was well documented, carefully reasoned, and clearly is in the best interests of these children.

Order affirmed.