**In re ADOPTION OF Alexandra Ann GODZAK, a Minor.**

**Appeal of Thomas E. GODZAK, Natural Father.**

**In re ADOPTION OF Alexandra Ann GODZAK, a Minor.**

**Appeal of Joan E. LESNOCK, Guardian Ad Litem Appointed to Represent the Minor Child.**

Superior Court of Pennsylvania.

Argued Sept. 23, 1998.

Filed Oct. 26, 1998.

Gary A. Falatovich, Greensburg, for Thomas Godzak, appellant.

Joan Lesnock, Washington, appellant.

Janette Baisley, Donora, for appellee.

Before MUSMANNO and ORIE MELVIN, JJ., and CIRILLO, President Judge Emeritus.

CIRILLO, President Judge Emeritus:

Thomas E. Godzak ("Father") appeals, and Joan E. Lesnock ("Guardian") cross-appeals, from the final decree entered in the Court of Common Pleas of Washington County involuntarily terminating Father's parental rights.[1] We reverse.

Alexandra Ann Godzak was born on December 9, 1993; she is the daughter of Father and natural mother, Denise Bollman ("Bollman"). Bollman and Father were never married; the parties resided together, however, prior to and after Alexandra's birth. In March of 1995, Bollman and Father separated; Bollman and Alexandra moved into Bollman's parents' home until February of 1996.

After the parties' separation, Father visited Alexandra almost every week in March of 1995.[2] From April, 1995 until November of 1995, however, Father had minimal contact with Alexandra. In November of 1995, when Alexandra was hospitalized for bacterial meningitis, Father visited her every day in the hospital. Father bought Alexandra Christmas gifts in December of 1995 and asked that Alexandra be permitted to visit her paternal grandmother on Christmas Day of that same year.[3] Prior to Bollman filing the petition to terminate his parental rights, Father's last contact with Alexandra took place in January of 1996 when Father took Alexandra to a friend's house for a Super Bowl party.

In February of 1996, Bollman moved in with her current husband, Craig Bollman.[4] In May of 1997, Bollman filed a petition to involuntarily terminate Father's parental rights to Alexandra. See 23 Pa.C.S.A. § 2511. At the parties' termination hearing, Father presented limited but uncontradicted testimony of his ability and desire to retain his rights to Alexandra. On December 9, 1997, the trial court issued a *decree nisi* terminating Father's parental rights; Father filed exceptions to this decree that were de-

---

1. Pursuant to Pennsylvania Rule of Appellate Procedure 513, we have consolidated these cases on appeal. "Where there is more than one appeal from the same order, or where the same question is involved in two or more appeals in different cases, the appellate court may, in its discretion, order them to be argued together in all particulars as if but a single appeal." Pa. R.A.P. 513. Presently, Father and Guardian appeal from the same order denying Father's exceptions and terminating Father's parental rights. Additionally, both appeals involve the same issue, namely whether the trial court committed an error of law in terminating Father's parental rights; consolidation is therefore proper.

2. Father acknowledged that Bollman did not prevent him from visiting Alexandra; Bollman, however, often required that she be present during Father's visits and also refused to allow Father to take Alexandra for overnight visits.

3. Father testified that he was unaware of Alexandra's whereabouts at this time and that he was never informed that Bollman had married.

4. Mr. Bollman is currently seeking to adopt Alexandra.

nied. Father and Guardian filed notices of appeal from the order denying these exceptions. On appeal Father raises the following issue for our review:

> Whether the trial court committed an abuse of discretion or error of law in terminating the parental rights of the natural father where no testimony was given nor findings made regarding the effect of termination on the needs and welfare of the minor child?

On cross-appeal, Guardian raises the following issue for our consideration:

> Whether the trial court committed [an] error of law by failing to take into consideration the effect the termination of the rights of her natural father would have on the needs and welfare of the minor child?

■ It is well settled that a trial court's decision regarding whether to grant a petition to terminate parental rights is governed by the statutory requirements of 23 Pa. C.S.A. § 2511. To satisfy section 2511, the moving party must demonstrate by clear and convincing evidence that conduct existed, for at least six months prior to filing the petition, which reveals a settled intent to relinquish a parental claim to a child or a refusal or failure to perform parental duties. *In re E.D.M.*, 550 Pa. 595, 708 A.2d 88 (1998). The clear and convincing standard will be met when testimony is "clear, direct, weighty and convincing as to enable the trier-of-fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* at 601, 708 A.2d at 91. Once the evidence establishes a failure to perform parental duties or a settled purpose to relinquish parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) the effect of termination of parental rights on the child pursuant to Section 2511(b). *Id.* at 602, 708 A.2d at 92 (*citing In re Adoption of Atencio*, 539 Pa. 161, 650 A.2d 1064 (1994)).

■ When reviewing a decree that involuntarily terminates parental rights, an appellate court is limited to a determination of whether the trial court's decree is supported by competent evidence. *In re V.E.*, 417 Pa.Super. 68, 611 A.2d 1267 (1992). Both Father and Guardian argue that the trial court impermissibly terminated Father's parental rights to Alexandra because there is no clear and convincing evidence regarding the effect that such termination would have on Alexandra's needs and welfare. Specifically, Guardian recommends against terminating Father's parental rights.

■ In the present case, Father's parental rights were terminated pursuant to the following provisions of the Adoption Act, 23 Pa.C.S.A. § 2511, *et seq.*:

> § 2511. Grounds for involuntary termination
>
> (a) General rule. – The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> (1) The parent by conduct continuing for a period of at least six months either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S.A. § 2511(a)(1).

At the termination hearing, Father offered the following reason for his six-month lapse of contact with Alexandra:

> Feelings were definitely getting a little bad towards everyone. It was easy to see everybody wasn't just one big happy family. Everybody was very stressed out, including myself. I was crushed when she took my daughter from me, and it took me many months to get to the point where I could straighten myself out on my own and try to get a better life. Everybody reacts to problems different. I may have been wrong, but I don't think – unless it's happened to you, you don't know how you are going to react, and I took it personally. [I]t crushed me.

Father further justified his extended failure to contact Alexandra based upon his enrollment and involvement in police school in April of 1996. Father acknowledged that his primary and all-consuming focus on his career as a police officer was a bad decision; in

hindsight he knows that he should have retained contact with his daughter.[5]

It is undisputed that Father failed to maintain contact with Alexandra, and therefore failed to perform any parental duties with regard to her, for a period in excess of six months. 23 Pa.C.S.A. § 2511(a)(1). This court has repeatedly recognized that "[p]arental rights are not preserved ... by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her immediate physical and emotional needs." *In re Shives*, 363 Pa.Super. 225, 231, 525 A.2d 801, 804 (1987) (citations omitted). This, however, does not end our termination analysis.

Section 2511(b) of the Adoption Act clearly states:

(b) Other considerations. – **The court in terminating the rights of a parent shall give primary consideration to the needs and welfare of the child.** The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

23 Pa.C.S.A. § 2511(b) (emphasis added). In fact, our supreme court has specifically noted that the Adoption Act **requires** that a trial court examine the effect termination will have on the needs and welfare of the child involved. *In re Atencio*, 539 Pa. 161, 167, 650 A.2d 1064, 1066–67 (1994).

Recently, the Pennsylvania Supreme Court emphasized the importance of the bond between a child and his or her natural parent. In *In re E.D.M.*, 550 Pa. 595, 708 A.2d 88 (1998), our supreme court stated:

We cannot underestimate the importance of a child's relationship with his or her biological parent. Here, [Mother] does not seek to take the children from their home or family [with Father and his new wife], but she is requesting visitation rights through which she may maintain a presence in the children's lives. **This contact will allow the children to continue to feel loved by their mother and receive her guidance and nurturing. Further, it may preclude the children's painful search for their biological mother as a teen or adult and the emotional injuries caused by the separation.** [citation omitted].

*In re E.D.M.*, 550 Pa. at 604–05, 708 A.2d at 93 (emphasis added). In *E.D.M.*, the Mother sought the right to visit her natural children; her children resided with Father and his new wife after Father and Mother separated. The supreme court found that the record lacked clear and competent evidence demonstrating that termination of Mother's parental rights would serve the needs and welfare of her children. Accordingly, the supreme court reversed the order of the superior court affirming the termination order. *Id.*

Presently, we are not provided with a trial court opinion explaining the rationale for terminating Father's parental rights. In fact, the March 2, 1998 order denying Father's exceptions contains the trial court's sole justification in terminating Father's parental rights:

Upon further review of the record in this matter, we find that the child is a member of a complete family that provides physical, emotional, and spiritual support. Accordingly, this Court finds that sufficient evidence exists to conclude that the needs and welfare of the child will be best served by the termination of the parental rights of the natural father.

---

5. A number of witnesses testified that Father was a caring, loving and "good father." Furthermore, Father expressed that he was fearful of contacting Bollman because of the turmoil that often ensued when he went to visit with Alexandra. Until Father began his police training, he often brought clothes and toys to his daughter, requested visits with her, and sent her gifts. Additionally, Father modestly admitted to having inadequate funds to provide for his daughter; by enrolling in police school Father stated that he intended to "straighten [him]self out on [his] own and try to get a better life" for Alexandra's sake. *Cf. In re Bowman*, 542 Pa. 268, 666 A.2d 274 (1995) (opinion in support of affirmance) (where Father was far from a good parent, supreme court affirmed trial court order failing to terminate Father's parental rights; evidence of relinquishment of parental claim was not clear and convincing and it was not clear that termination would serve the best interests of the children).

Furthermore, the record is devoid of any evidence concerning the effect that termination would have on Alexandra. Without such evidence the court was unable to assess the needs and welfare of Alexandra if Father's parental rights were terminated. *In re Atencio, supra* (where record was devoid of evidence regarding effect termination would have on child, the trial court correctly concluded that it had no way of assessing the effect of termination on needs and welfare).

Recognizing the "importance of a child's relationship with his or her biological parent," the trial court's failure to "give primary consideration to" Alexandra's needs and welfare in light of terminating Father's parental rights was clearly erroneous. 23 Pa.C.S.A. § 2511(b); *In re E.D.M., supra.* Such omission is contrary to the express provisions in the Adoption Act and the law of termination as upheld by our supreme court. 23 Pa. C.S.A. § 2511 *et seq.*; *In re Atencio, supra.* Without competent evidence of record to support the trial court's decision to terminate Father's parental rights, *In re V.E., supra,* we must reverse the trial court order. *In re Atencio, supra.*

Order reversed.