J-A24007-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN RE: ADOPTION OF H.H., A MINOR | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: M.H., FATHER | : | No. 1188 EDA 2014 |

Appeal from the Order Entered March 11, 2014
In the Court of Common Pleas of Monroe County
Domestic Relations at No(s): 38 OCA 2013

| IN RE: ADOPTION OF R.M.H., A MINOR | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: M.H., FATHER | : | No. 1189 EDA 2014 |

Appeal from the Order Entered March 11, 2014
In the Court of Common Pleas of Monroe County
Domestic Relations at No(s): 39 OCA 2013

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., AND PLATT, J.*

MEMORANDUM BY GANTMAN, P.J.:          **FILED SEPTEMBER 12, 2014**

Appellant, M.H. ("Father"), appeals from the orders entered in the Monroe County Court of Common Pleas, which involuntarily terminated his parental rights to his minor children, H.H. and R.M.H. ("Children").  We affirm.

In its opinion filed March 11, 2014, the trial court fully and correctly set forth the relevant facts and procedural history of this case.  Therefore, we have no reason to restate them.  We add only that Father timely filed notices of appeal, from the orders involuntarily terminating his parental

_____

*Retired Senior Judge assigned to the Superior Court.

J-A24007-14

rights, on April 9, 2014, along with concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i).

Father raises the following issues for our review:

DID [MOTHER] FAIL TO EXHIBIT CLEAR AND CONVINCING EVIDENCE THAT [FATHER] HAD EVIDENCED A SETTLED PURPOSE OF RELINQUISHING PARENTAL CLAIM TO HIS CHILDREN?

A. DID THE COURT FAIL TO FOCUS ON THE ENTIRE SITUATION EXISTING PRIOR TO THE FILING OF THE TERMINATION PETITION, AND FAILED TO ACKNOWLEDGE THE NUMEROUS EFFORTS [FATHER] MADE TO ATTEMPT TO ESTABLISH A RELATIONSHIP AND FULFILL PARENTAL DUTIES WITH RESPECT TO HIS CHILDREN WHICH WAS BLOCKED BY MOTHER?

B. DID THE COURT FAIL TO GIVE ANY WEIGHT TO THE CONSISTENT CHILD SUPPORT THAT [FATHER] HAS PAID THROUGHOUT THE PARTIES' SEPARATION, THE FACT THAT [FATHER] KEPT A LIFE INSURANCE POLICY ON HIMSELF TO BENEFIT THE CHILDREN, AND PAID THE PREMIUMS?

DID THE COURT FAIL TO ASSESS THE APPROPRIATENESS OF THE PROPOSED ADOPTIVE FATHER…AND HIS OWN POOR RELATIONSHIP WITH HIS BIOLOGICAL DAUGHTER AS A STRONG INDICATION THAT HE DOES NOT EXHIBIT THE REQUISITE DEDICATION TO TAKE ON ADDITIONAL FATHERING RESPONSIBILITIES?

(Father's Brief at 5).

The standard and scope of review applicable in termination of parental rights cases are as follows:

When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's

- 2 -

decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that it would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by [the] finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.

The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. We may uphold a termination decision if any proper basis exists for the result reached. If the trial court's findings are supported by competent evidence, we must affirm the court's decision, even though the record could support an opposite result.

*In re Adoption of K.J.*, 936 A.2d 1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165 (2008) (internal citations omitted).

Under Section 2511(b), the court must consider whether termination of parental rights meets the children's needs and welfare. *In re C.P.*, 901 A.2d 516, 520 (Pa.Super. 2006). "Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond." *Id.* (internal citation omitted).

J-A24007-14

The statute permitting the termination of parental rights outlines certain irreducible minimum requirements of care that parents must provide for their children. ***In re B.L.L.***, 787 A.2d 1007 (Pa.Super. 2001).

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.
>
> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.
>
> Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.
>
> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his…ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with [the child's] physical and emotional needs.
>
> \* \* \*
>
> Where a non-custodial parent is facing termination of his…parental rights, the court must consider the non-custodial parent's explanation, if any, for the apparent

- 4 -

neglect, including situations in which a custodial parent has deliberately created obstacles and has by devious means erected barriers intended to impede free communication and regular association between the non-custodial parent and his…child. Although a parent is not required to perform the impossible, he must act affirmatively to maintain his relationship with his child, even in difficult circumstances. A parent has the duty to exert himself, to take and maintain a place of importance in the child's life.

Thus, a parent's basic constitutional right to the custody and rearing of his…child is converted, upon the failure to fulfill his…parental duties, to the child's right to have proper parenting and fulfillment of his…potential in a permanent, healthy, safe environment.

*In re B.,N.M.*, 856 A.2d 847, 855-56 (Pa.Super. 2004), *appeal denied*, 582 Pa. 718, 872 A.2d 1200 (2005) (internal citations omitted).

After a thorough review of the record, the briefs of the parties, the applicable law, and the comprehensive opinions of the Honorable David J. Williamson, we conclude Father's issues merit no relief. The trial court opinions discuss and properly dispose of the questions presented. (**See** Trial Court Opinion, filed March 11, 2014, at 5-9; Trial Court Opinion, filed May 6, 2014, at 1-2) (finding: Father has had no contact with Children for more than three years and did not make reasonable attempts to see or contact Children; Father could have contacted Mother's attorney for information regarding Children after Protection From Abuse ("PFA") order expired in 2012; Father took no concrete steps to modify custody order or establish ties to Children; Father failed to comply with custody order directing Father to complete psychiatric evaluation within sixty days, and did not complete

evaluation for more than one year after order; Father did not attend co-parenting class as required by custody order for more than two years; Father's delay in obtaining psychiatric evaluation and submitting evaluation to Mother's attorney and delay in filing for custody modification are attributable only to Father, and Father took no affirmative steps to overcome obstacles for almost three years; Father has failed to perform parental duties for period in excess of six months prior to filing of termination petition and has evidenced settled purpose to relinquish parental rights by his actions; further, Children look to proposed adoptive father ("Stepfather") as their father and have bonded with Stepfather; Children do not know or have memories of Father; considering Children's ages, time spent away from Father, time spent with Mother and Stepfather, and Stepfather's desire to adopt, termination of Father's parental rights is in Children's best interests; termination of Father's parental rights is proper under Section 2511(a)(1) and (b), and Stepfather shall have right to proceed with adoption of Children).[1]  Accordingly, we affirm on the basis of the trial court's opinions.

Orders affirmed.

---

[1] Additionally, Father's payment of child support and designation of Children as the beneficiaries of a life insurance policy does not satisfy his requirements as a parent or undo his failure to perform parental duties. *See* ***In re B.,N.M., supra***; ***In re Shives***, 525 A.2d 801 (Pa.Super. 1987) (explaining it is not enough to remit child support payments as required by court order to fulfill parental obligations).  Furthermore, Stepfather's relationship with his biological daughter is not relevant to Stepfather's care of and bond with Children.

J-A24007-14

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/12/2014

## COURT OF COMMON PLEAS OF MONROE COUNTY
## FORTY-THIRD JUDICIAL DISTRICT
## COMMONWEALTH OF PENNSYLVANIA
## ORPHANS' COURT DIVISION

IN RE:                              : NO. 39 OCA 2013
                                    :
ADOPTION OF                         :
R.M.H.                     ,        :
A Minor                             :
                                    : PA.R.A.P. 1925(a)

### STATEMENT PURSUANT TO PA. R.A.P. 1925(a)

AND NOW, this 6th day of May, 2014, after a review of Appellant's

Concise Statement of Matters Complained of on Appeal, we determine that the Court has

adequately addressed these issues in its Findings of Fact, Discussion, Conclusions of Law with

accompanying Order dated March 11, 2014, with the exception of the following:

One clarification of this Court's Findings by Order dated March 11, 2014 is

necessary. The Court was mistaken in taking note that the Appellant failed to attend the Co-

Parent Education Class. The Appellant was Court Ordered to attend the Co-Parent Education

class by Order dated June 17, 2011. He failed to do so for over two (2) years and a Rule was

eventually issued on September 24, 2013 to show cause why he should not be held in contempt

for failure to attend. The Appellant then attended and filed proof thereof on October 29, 2013.

However, this fact does not effect the final decision one way or another.

All other issues raised by the Appellant were adequately addressed by the Opinion dated March 11, 2014. Nothing remains to be determined at this time.

BY THE COURT:

_____
DAVID J. WILLIAMSON, J.

cc:    Jason M. Leon, Esquire
Kimberly Fedrigon, Esquire

2014 MAY 6 PM 3 11
MONROE COUNTY, PA
CLERK OF COURTS

**COURT OF COMMON PLEAS OF MONROE COUNTY**
**FORTY-THIRD JUDICIAL DISTRICT**
**COMMONWEALTH OF PENNSYLVANIA**
**ORPHANS' COURT DIVISION**

IN RE:                  : NO. 38 OCA 2013

                       :

        ADOPTION OF        :

        H.H.                :

        A Minor            :

                       : PA.R.A.P. 1925(a)

## STATEMENT PURSUANT TO PA. R.A.P. 1925(a)

AND NOW, this 6th day of May, 2014, after a review of Appellant's

Concise Statement of Matters Complained of on Appeal, we determine that the Court has

adequately addressed these issues in its Findings of Fact, Discussion, Conclusions of Law with

accompanying Order dated March 11, 2014, with the exception of the following:

One clarification of this Court's Findings by Order dated March 11, 2014 is

necessary. The Court was mistaken in taking note that the Appellant failed to attend the Co-

Parent Education Class. The Appellant was Court Ordered to attend the Co-Parent Education

class by Order dated June 17, 2011. He failed to do so for over two (2) years and a Rule was

eventually issued on September 24, 2013 to show cause why he should not be held in contempt

for failure to attend. The Appellant then attended and filed proof thereof on October 29, 2013.

However, this fact does not effect the final decision one way or another.

All other issues raised by the Appellant were adequately addressed by the Opinion dated March 11, 2014. Nothing remains to be determined at this time.

BY THE COURT:

_____
DAVID J. WILLIAMSON, J.

cc:    Jason M. Leon, Esquire
Kimberly Fedrigon, Esquire

CLERK OF COURTS
2014 MAY 6 PM 3 11
MONROE COUNTY, PA

COURT OF COMMON PLEAS OF MONROE COUNTY
FORTY-THIRD JUDICIAL DISTRICT
COMMONWEALTH OF PENNSYLVANIA
ORPHANS' COURT DIVISION

IN RE:                               : NO. 38 O.C.A. 2013

          :
ADOPTION OF
H.H.           :
A Minor           : INVOLUNTARY TERMINATION
          : OF PARENTAL RIGHTS

---

IN RE:           : NO. 39 O.C.A. 2013

          :
ADOPTION OF
R.M.H.           :
A Minor           : INVOLUNTARY TERMINATION
          : OF PARENTAL RIGHTS

## PROCEDURAL BACKGROUND

This matter involves a Petition for Involuntary Termination of Parental Rights and Adoption in case No. 38 OCA 2013 for H.H. (H.H.) and in case No. 39 OCA 2013 for R.M.H. (R.H.). The cases were consolidated for purpose of a hearing in this matter and will be reviewed jointly in this Court's Opinion. The matters were filed on October 2, 2013 by the natural mother and stepfather. A hearing was scheduled for December 20, 2013, and continued at Father's request to February 25, 2014. Mother and Stepfather were represented by counsel, Attorney Kimberly Fedrigon. Father was represented by Attorney Jason Leon.

## FINDINGS OF FACT

1.  P. S.        , now by marriage   P. G.        (Mother), age 32, is the natural mother of H.H. ( Born Sept. 2007, age 6) and R.H. ( Born July 2009, age 4).

2.  M. H.        (Father), age 49, is the natural father of H.H. and R.H.

3.  Mother and Father were married March 19, 2007 and remained married at time of birth of the minor children.

4.  Mother and Father were divorced on June 13, 2013 by Order of the Court of Common Pleas of Monroe County, Pennsylvania.

5.  Mother married   J. G.   (Stepfather), age 47, on August 31, 2013.

6.  Mother and Father were separated since November 2010, when Mother moved with the children to Tobyhanna, Monroe County, Pennsylvania from Brooklyn, New York.

7.  Father remained in Brooklyn, New York after the separation.

8.  Following a physical altercation between Father and Mother, Father was charged in Monroe County, Pennsylvania with assault on December 20, 2010, and Mother obtained a final three (3) year no contact Protection From Abuse Order (PFA) against Father on December 27, 2010, which Order expired on December 27, 2013.

9.  Father ultimately entered a guilty plea and received a sentence of time served and placed on probation for a period of two (2) years.

10.  Mother also obtained a Final PFA Order against Father on March 28, 2011 as to the children, H.H. and R.H., which order expired on March 28, 2012.

2

11. A Custody Order was entered for Mother, Father and the minor children on July 26, 2011, of which this Court takes judicial notice.

12. The Custody Order awarded Mother sole legal and physical custody of the minor children, required Father to have a full psychiatric evaluation at an agency in the County in which he lived in New York within sixty (60) days of the date of the Order, and for both parents to attend the Co-Parent Education Program.

13. The Order provided that upon Father's completion of a psychiatric evaluation, with a copy of the evaluation to be provided to Mother's attorney, either party could petition for a full evidentiary hearing or a custody conference.

14. During the pendency of the custody matter in Pennsylvania, Father filed a separate action for custody in New York.

15. The New York custody matter was the subject of a jurisdictional issue and was ultimately dismissed for lack of jurisdiction on June 15, 2011.

16. Father filed an appeal in New York of the relinquishment of jurisdiction to Pennsylvania that was ultimately denied.

17. Father had a psychiatric evaluation done in October of 2012, and a report was issued in February of 2013.

18. Father submitted the report to Mother's attorney, in September 2013, after Father filed for modification of custody.

19. There is no record of Father completing the Co-Parent Education Program as ordered on July 26, 2011.

3

20. Mother completed the Co-Parent Education Program on August 6, 2011 per the certificate filed to the custody case at No. 1371 DR 2010.

21. Father filed for a modification of custody on September 23, 2013.

22. Mother and Stepfather filed Petitions to Terminate Parental Rights and Petitions for Adoption on October 2, 2013.

23. Father has not seen or contacted the children since on or before December 2010.

24. Father has not sent the children letters, cards, or gifts since on or before December 20, 2010.

25. Father has been paying child support, but was in arrears $957 as of the date of the hearing due to a period of time he was unable to pay support while he was incarcerated.

26. Mother was born in Brazil and is not a citizen of the United States.

27. Father was born in Egypt, but he is a citizen of the United States.

28. The minor children are citizens of the United States.

29. Stepfather is a citizen of the United States.

30. Mother, Stepfather, and the minor children reside with Stepfather's elderly father in Northampton County, Lehigh Valley, Pennsylvania.

31. Father has not had an address for Mother since December 2010.

32. Mother has been represented by the same attorney throughout the PFA, custody and divorce proceedings.

33. Father has continued to reside in Brooklyn, New York.

4

34. Stepfather has filed a petition to adopt the minor children and intends to do so if the termination of parental rights is granted.

## DISCUSSION

The Petition to Involuntarily Terminate Parental Rights has been brought under 23 Pa. C.S.A. §2511 (a)(1) which states as follows:

> (a) General Rule – The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

> (1) The parent by conduct for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa. C.S.A. §2511 (a)(1). See also In re E.M.I., 57 A.3d 1278 (Pa. Super. 2012).

In making a final determination, in addition to the factors set forth in 23 Pa.C.S.A. §2511 (a)(1), this Court must also look at other considerations for the children. The primary consideration is the developmental, physical, and emotional needs and welfare of the children. See 23 Pa. C.S.A. §2511 (b). The standard of proof to be met for an involuntary termination of parental rights proceeding is clear and convincing evidence. Santosky v. Kramer, 455 U.S. 745 (1982); In re Atencio, 539 Pa. 164, 650 A.2d 1066 (1994).

In considering a step-parent adoption, the Court shall also give consideration to the fact the step-parent will serve the purpose of protecting the integrity and stability of the family unit if the termination of rights is granted. In re Adoption of L.J.B., 18 A.3d 1098, 610 Pa. 213 (2011). Under 25 Pa. C.S.A. §2511(a), the Court shall consider not only the events of

5

the six (6) month period referenced in the statute, but also those actions the other parent took after expiration of that time period. Furthermore, once a six (6) month period has passed, the mere renewal of interest and desire by a parent does not negate the prior abandonment. See In re E.S.M., 622 A.2d 388 (Pa. Super. 1993). Finally, a parent must show affirmative steps to overcome obstacles to a parental relationship, and exercise a "reasonable firmness in attempting to overcome the obstructive behavior". Baby Boy A v. Catholic Social Services, 512 Pa. 517, 517 A.2d 1244 (1986); See also, In re E.M.S., 832 A.2d 457 (Pa. Super. 2003).

Here, Father has had no contact of any kind with the minor children since December 2010, a period of over three (3) years. Considering the young ages of the children, this time period is most of their lives, and during some of their most formative years. Furthermore, Father did not display reasonable attempts to see his children. Father stated he waited for the appeal of jurisdiction to conclude in New York before proceeding to have the psychiatric evaluation done. However, the New York appeal was not an obstacle to having the evaluation done to then proceed in Pennsylvania pursuant to that order for custody. Father also had no explanation for the delay in his receiving the report, or the delay in providing it to opposing counsel. When he was asked how it made him feel to not see his children for three (3) years, Father did not respond as to his feelings; rather, he assessed blame on court problems, PFA problems, and Mother's accusations concerning the assault as the reason for the delay. Father also stated he did not know where Mother and the children were living.

Father also cited a diminished financial ability to pursue custody rights. He stated this was due to the arrest from the altercation with Mother, and subsequent (45) days incarceration; a loss of his savings due to expenses while living with Mother; and costs in New

6

York for the custody jurisdiction appeal. Father also blamed the delay in filing for a custody modification on wanting to first conclude the divorce from Mother, during which time he hoped Mother could resolve custody with him as part of the divorce.

We note that Father waited more than a year to have the Court ordered psychiatric evaluation performed, even though he was permitted to do it in Kings County, New York where he resides. It took almost another year for Father to forward the results of the psychiatric evaluation to Mother's counsel. Father never attended the Co-Parent Education Program. Father never availed himself of his rights to file for a custody modification or a full evidentiary hearing until September 23, 2013, which was more than two years after the last custody order was entered. Father did not attempt to contact the children, nor did he send them cards and letters. Father made no attempt to make contact through Mother's attorney.

Father alleges the PFA Order as to Mother prevented contact with her, and the PFA Order as to the children barred contact with them. Father also alleges that financial problems made it difficult to pursue custody sooner. However, neither difficult circumstances, nor waiting for a more suitable financial circumstance or convenient time to perform parental duties will preserve parental rights. See Adoption of McCray, 460 Pa. 210, 331 A.2d 652 (1975) (parent's responsibilities are not tolled nor relieved because of difficulties of incarceration); In re G.P. R., 851 A.2d 967 (Pa. Super. 2004) (parental rights not preserved while waiting for better financial circumstances); In re B, 856 A.2d 847 (Pa. Super. 2004) (parent has a duty to exert himself to take and maintain a place of importance in children's lives).

Father could have contacted Mother's attorney for information on the children, at the very least when the PFA order for them expired on March 25, 2012. Father could have filed

7

for custody after this PFA Order regarding the children expired. Father could have sought reconsideration or filed for modification of the PFA Order concerning Mother and/or the children to allow contact with the children, but he failed to do so. Father could have had the psychiatric evaluation done sooner. Although Father did not have an address for Mother, he could have gotten notice or service to her through Mother's attorney, the Domestic Relations office, or by filing for a modification of custody or PFA orders and requesting the Sheriff to make service.

Father's claim he was barred by the Custody Order from seeing the children, and therefore beyond his control, is no excuse. Father took no concrete steps to modify the Custody Order, or establish ties to the children as required. See Adoption of R.J.S., 901 A.2d 502 (Pa. Super. 2006). Father's delay in obtaining the psychiatric evaluation, his delay in providing it to Mother's attorney, and his delay in filing for a custody modification, are attributable to him, and we see no evidence that he took affirmative steps to overcome these obstacles for almost three years since he last saw the children. For these reasons, Father has failed to perform parental duties for a period well in excess of six months prior to the petition being filed. We note that Father also clearly evidenced a settled purpose to relinquish his parental rights by these actions.

We also find that the needs and welfare of the children will be best met by terminating Father's parental rights. The children are at an age where they need to recognize a strong parental tie. Stepfather has been in the lives of the children for nearly the last three years. Although Stepfather has always told the children he is their stepfather, and that they have a father, we find him credible that the children look to him as their father. Mother and Stepfather gave convincing testimony that the children have bonded with Stepfather and that they do not

8

know or have memories of their Father. We find that even though the children were born into the Islamic faith, that granting a termination of parental rights will not pose a harm to the children as a result of this issue. The children can always elect to participate in the Islamic faith when they are adults, and there is no evidence of harm to them if not raised in that faith at this time. The children will benefit from parents who will and are actively participating in their lives.

Considering the children's ages, the time spent away from their Father, the time spent with Mother and Stepfather, and Stepfather's desire to adopt the children, we find it would be in the children's best interests to grant the termination of parental rights.

## CONCLUSIONS OF LAW

1. Father has by conduct for a period of at least six (6) months immediately preceding the filing of the petition, evidenced a settled purpose to relinquish parental rights or refused to perform, or has failed to perform parental duties under 23 Pa.C.S.A. §2511(a)(1).

2. It is in the children's best interests under 23 Pa. C.S.A. §2511(b) to terminate Father's parental rights.

3. Stepfather intends to adopt the children and has filed a Petition for Adoption.

4. Mother consents to the adoption by Stepfather.

9

COURT OF COMMON PLEAS OF MONROE COUNTY
FORTY-THIRD JUDICIAL DISTRICT
COMMONWEALTH OF PENNSYLVANIA
ORPHANS' COURT DIVISION

IN RE:                      :   NO. 38 O.C.A. 2013
                             :

        ADOPTION OF         :
        H . H               :
        A Minor             :   INVOLUNTARY TERMINATION
                             :   OF PARENTAL RIGHTS


## D E C R E E

AND NOW, this // th day of March, 2014, in accordance with the foregoing Findings of Fact, it is ORDERED as follows:

1. All parental rights and duties of M . H . to his daughter, H . H . are terminated.

2. The proposed adopting parent, J . G . , shall have the right to proceed with the adoption of H . H . without further notice to the biological father.

3. Counsel for Petitioners is directed to serve a copy of this Decree upon the biological father by first class mail at his last known address.

10

4.   M·H·   is advised of his right to appeal to the Superior Court of

Pennsylvania within 30 days of the date hereof.

BY THE COURT:

_____
DAVID J. WILLIAMSON, J.

cc:   Jason M. Leon, Esquire
      Kimberly Fedrigon, Esquire

CLERK OF COURTS
MONROE COUNTY, PA
2014 MAR 12 AM 11 11

11

COURT OF COMMON PLEAS OF MONROE COUNTY
FORTY-THIRD JUDICIAL DISTRICT
COMMONWEALTH OF PENNSYLVANIA
ORPHANS' COURT DIVISION

IN RE:                      : NO. 39 O.C.A. 2013

                            :

ADOPTION OF           :

R. M. H.                 :

A Minor                  : INVOLUNTARY TERMINATION

                            : OF PARENTAL RIGHTS

## D E C R E E

AND NOW, this  /1th  day of March, 2014, in accordance with the foregoing Findings of Fact, it is ORDERED as follows:

1. All parental rights and duties of  M. H.  to his son,  R. M. H.  are terminated.

2. The proposed adopting parent, . J. G. , shall have the right to proceed with the adoption of  R. M. H.  without further notice to the biological father.

3. Counsel for Petitioners is directed to serve a copy of this Decree upon the biological father by first class mail at his last known address.

12

4.    M. H.    is advised of his right to appeal to the Superior Court of Pennsylvania within 30 days of the date hereof.

BY THE COURT:

DAVID J. WILLIAMSON, J.

cc:    Jason M. Leon, Esquire
       Kimberly Fedrigon, Esquire

DJW2014-R-009 Hassan Inv Term TRP 38-39 OCA 2013.docx

2014 MAR 11 PM 1 02
MONROE COUNTY, PA
CLERK OF COURTS

13