J-S37044-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: ADOPTION OF S.R., A MINOR CHILD | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: A.R., NATURAL FATHER | No. 28 WDA 2016 |

Appeal from the Order December 15, 2015
In the Court of Common Pleas of Fayette County
Orphans' Court at No(s): 23 ADOPT 2015

BEFORE: GANTMAN, P.J., SHOGAN, J., and LAZARUS, J.

MEMORANDUM BY LAZARUS, J.:                          **FILED MAY 09, 2016**

A.R. (Father) appeals from the trial court's order involuntarily terminating his parental rights to his child, S.R. (born 1/2013). The court terminated Father's rights after concluding that he "utterly failed to perform any parental duties during the entirety of the child's almost-three years of life prior to the filing of the instant termination petition."[1] After careful review, we affirm.

Following Child's birth, Mother[2] asked her close friend, B.V., to take custody of Child as Fayette County Children and Youth Services (FCCYS) was prepared to remove Child from Mother's care. On May 3, 2013, Child was

---

[1] *See* Trial Court Opinion, 1/12/16, at 6.

[2] Mother is not a party to this appeal. She has voluntarily terminated her parental rights to Child.

placed into B.V.'s custody.[3]  B.V. is a prospective adoptive parent for Child. In June 2014, Child was returned to Mother's custody, with visitation rights granted to B.V.  Child was again returned to B.V.'s care in October 2014, where she has remained to date.

Father agreed to have Child placed in B.V.'s custody; Child has never lived with Father since her birth.  From May 2013 until October 2014, Father had supervised visits with Child through FCCYS.  In February 2015, B.V. moved to a new home which is only one and one half blocks from Father's residence.[4]  On June 19, 2015, B.V. filed a petition to involuntarily terminate Father's parental rights to Child.  On November 9, 2015, the court held a termination hearing at which B.V., B.V.'s boyfriend, Father, and Father's fiancée testified.  Following the hearing, the court entered an order involuntarily terminating Father's parental rights and awarding custody of Child to B.V.  This appeal follows.

On appeal, Father presents the following issues for our consideration:

_____

[3] A person who has custody of a child and/or stands *in loco parentis* has standing to seek termination of a biological parent's parental rights to a child when the biological parent has failed to perform parental duties, and the person filing to terminate the parental rights has also filed a report of intention to adopt as required by 23 Pa.C.S. § 2531.  Instantly, B.V. has and continues to be the physical custodian of Child.

[4] In fact, Father helped B.V. move into her nearby residence in February 2015.

> (1) The Petitioner failed to establish by clear and convincing evidence that Appellant, A.R., failed to perform his parental duties for the minor child, S.R., since May 3, 2013.
>
> (2) The trial court failed to consider the obstructive tactics that Petitioner employed to prevent Appellant, A.R., from performing his parental duties for the minor child, S.R., since May 3, 2013.

We note that:

> [i]n a proceeding to terminate parental rights involuntarily, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so. The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." It is well established that a court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence in light of the totality of the circumstances clearly warrants termination.

*In re adoption of S.M.*, 816 A.2d 1117, 1122 (Pa. Super. 2003) (citation omitted). *See also In re C.P.*, 901 A.2d 516, 520 (Pa. Super. 2006) (party seeking termination of parental rights bears burden of proving by clear and convincing evidence that at least one of eight grounds for termination under 23 Pa.C.S. § 2511(a) exists and that termination promotes emotional needs and welfare of child set forth in 23 Pa.C.S. § 2511(b)).

Instantly, the trial court terminated Father's parental rights under section 2511(a)(1) of the Adoption Act, which provides:

> The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> (1) The parent by conduct *continuing for a period of at least six months immediately preceding the filing of the*

- 3 -

*petition* either has evidenced a settled purpose of relinquishing parental claim to a child or *has refused or failed to perform parental duties.*

23 Pa.C.S. § 2511(a)(1) (emphasis added).

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must then engage in three additional lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to section 2511(b). **In re Z.S.W.**, 946 A.2d 726, 730 (Pa. Super. 2008). The court must consider, as part of the section 2511(a)(1) inquiry regarding the parent's explanation for his or her conduct, whether the custodial parent "has deliberately created obstacles and has by devious means erected barriers intended to impede free communication and regular association between the non-custodial parent and his or her child." **In re Shives**, 525 A.2d 801, 803 (Pa. Super. 1987).

Father asserts that he regularly attempted to see Child and that he called B.V. and reached out to her on Facebook to schedule visits with Child. Moreover, Father claims that he frequently placed toys, food, diapers and clothing for Child on B.V.'s doorstep. Finally, Father claims that he permitted B.V. to use his van when she had custody of Child.

At the termination hearing, Father testified that the last time he saw Child was in February 2015 when he passed by B.V.'s house and Child was outside playing in the front yard. N.T. Termination Hearing, 11/9/15, at 25.

Prior to that time, Father testified that he would occasionally stop by B.V.'s home and drop off diapers, clothes and play toys on her front steps. *Id.* Father also testified that he had agreed that the situation with B.V. could turn into a permanent arrangement. *Id.* at 26. However, Father testified that he was under the impression that he would still be able to see Child even if B.V. ended up with permanent custody. *Id.*

With regard to the allegations that B.V. prevented Father from seeing Child, he testified that "I have gone to her house numerous times since then and every time I get met with resistance and threatened to have gentlemen . . . in my face threatening to beat me up if I come back to the house and things like that." *Id.* at 33. Father's fiancée, T.B., testified that Father has tried to contact B.V. by messengering her repeatedly to find out if he could see Child. *Id.* at 36. T.B. stated that B.V. will tell Father that she is busy and will call him back and then never calls back. *Id.* at 37. Father claims that were it not for B.V.'s obstructionist tactics, he would have been able to "do much more in the ways of performing his parental duties." Appellant's Brief, at 11.

B.V., on the other hand, testified that since she has had custody of Child, Father has only asked to see Child one time and that B.V. told him "no" because Child was sick. N.T. Termination Hearing, 11/9/15, at 7. B.V. testified that Father never calls to talk to Child, that Father is aware of B.V.'s address, that Father has not come to her house to see Child since October 2014, and that Father does not send Child Christmas or birthday gifts or

provide B.V. with financial assistance for raising Child. *Id.* at 8. B.V. testified that when she first became Child's caregiver, she had an agreement with Father that he could visit Child if he called first and they were home. *Id.* at 11.

> In *In re C.M.S.*, 832 A.2d 457 (Pa. Super. 2003), our Court stated:
>
> A parent is required to exert a sincere and genuine effort to maintain a parent-child relationship; the parent must use all available resources to preserve the parental relationship and **must exercise "reasonable firmness"** in resisting obstacles placed in the path of maintaining the parent-child relationship. *In re Shives*, [] 525 A.2d 801, 803 (Pa. Super. 1987). This Court has repeatedly recognized that "parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her immediate physical and emotional needs." *In re Adoption of Godzak*, 719 A.2d 365, 368 (Pa. Super. 1998) (citation omitted).

*Id.* at 462 (emphasis added). *See also In re Shives*, *supra* at 803 ("Parental duty does not require the impossible, but may encompass that which is difficult and demanding. A parent may not yield to every problem, but must act affirmatively, with good faith interest and effort, to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances.").

We review a trial court's decision to involuntarily terminate parental rights for an abuse of discretion or error of law. *In re A.R.*, 837 A.2d 560, 563 (Pa. Super. 2003). Our scope of review is limited to determining whether the trial court's order is supported by competent evidence. *Id.*

Instantly, we find that the trial court's decision to terminate Father's parental rights was not an abuse of discretion or error of law where Father did not demonstrate a "reasonable firmness" to overcome any alleged obstacles constructed by B.V. to prevent Father from contact with Child. *In re Shives*, *supra*. The trial court, which is tasked with making credibility determinations in termination cases, properly credited B.V.'s testimony that Father did not actively attempt to see Child since October 2014 where Father did not present any hard evidence to support his testimony that B.V. threatened him to stay away from Child, that he consistently called B.V. to see Child and that he regularly provided Child with food, diapers and clothing. *See In re: R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010) (appellate court accepts findings of fact and credibility determinations of trial court if they are supported by record).

> The court found that:
>
> There is no evidence of record to establish that Father ever demanded any regular or specific periods of actual physical custody nor is there any evidence that he has ever been able or willing to assume even a scintilla of responsibility for caretaking of the child or feeding her or bathing her, or engaging in any other parental obligations.

Trial Court Opinion, 1/12/16, at 3. The record supports this finding. *See In re C.M.S.*, *supra* (despite fact that Mother and third party engaged in deceptive practices regarding Child's impending adoption, where Father was aware of Child's birth, did not reside with Child, had not married Mother, and, had not made reasonable efforts to maintain substantial and continuing

contact with Child or provide financial support for Child, termination under section 2511(a)(1) warranted).   Accordingly, we affirm.  *In re A.R.*, *supra*.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/9/2016