J-S09029-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: S.M., JR., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: T.M., BIRTH MOTHER, | |
| Appellant | No. 1442 WDA 2014 |

Appeal from the Order Entered August 6, 2014
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): TPR NO. 042 OF 2014

| | |
|---|---|
| IN RE: M.M., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: T.M., BIRTH MOTHER, | |
| Appellant | No. 1443 WDA 2014 |

Appeal from the Order August 6, 2014
In the Court of Common Pleas of Allegheny County
Orphans' Court at No(s): TPR NO. 045 OF 2014

| | |
|---|---|
| IN RE: P.M., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: T.M., BIRTH MOTHER, | |
| Appellant | No. 1444 WDA 2014 |

Appeal from the Order August 6, 2014
In the Court of Common Pleas of Allegheny  County
Orphans' Court at No(s): TPR NO. 044 OF 2014

BEFORE:  FORD ELLIOTT, P.J.E., BOWES, and ALLEN, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED FEBRUARY 13, 2015**

T.M. ("Mother") appeals from the orders entered on August 6, 2014, wherein the trial court terminated her parental rights to her three minor sons, S.M., Jr., M.M. and P.M.[1]  We affirm.

Allegheny County Children Youth and Families ("CYF") had a long history with this family dating back to 1998.  The initial contact stemmed from allegations that Mother neglected six older children who are not relevant to this appeal.  Specifically, between 1998 and 2005, there were twelve allegations of neglect leveled against Mother.  CYF has provided Mother services throughout its involvement with the family.

S.M., Jr., and P.M. were born in 2008 and 2010, respectively.  M.M. was born in 2011.  The juvenile court first adjudicated S.M., Jr. dependent during January 2010, and P.M. was adjudicated dependent two months later.  Although the two children were briefly removed from Mother's care, their dependency cases were closed, and they were returned home with intensive in-home services.  Thereafter, on February 17, 2012, the juvenile court

_____

[1] The orphans' court also terminated the parental rights of S.M., the birth father of S.M., Jr., P.M., and M.M.  S.M. did not appeal that order.

adjudicated all three children dependent but permitted Mother to maintain physical custody.[2] CYF continued to provide the family in-home services until August 2012. Three months later, the agency removed all three of the children after it discovered that Mother had left the two younger children home alone under the supervision of then-four-year-old S.M., Jr. The children were placed together in the same pre-adoptive foster home where they have remained since November 2012.[3]

CYF devised a family service plan ("FSP") to achieve the stated goal of reunification. Mother's objectives under the FSP were to stabilize mental health, attend parenting classes, obtain adequate housing, engage in consistent visitation with the children, and contact and cooperate with the agency. Mother's progress was minimal. She did not maintain contact or cooperate with CYF, and she was openly hostile to the caseworkers assigned to the family. Although Mother utilized in-home services to address her parenting deficiencies and attended parenting classes, she failed to

_____

[2] The adjudications of dependency followed an incident wherein one of Mother's older children accidently shot another sibling with a sawed-off shotgun that he had discovered in Mother's bedroom. Fortunately, the injured child survived.

[3] The foster parents, whom the children refer to as "poppy and mommy," indicated that, due to Mother's oppositional behavior, they were hesitant to enter an open adoption that allowed Mother to maintain contact with the children after her parental rights are terminated. The foster parents cited incidents where Mother told S.M. Jr., that she would hurt the foster father and leveled allegations of abuse against them.

implement the skills and techniques that she learned. Additionally, Mother not only squandered CYF's financial offer to help her obtain a suitable home for the entire family, but she also refused to disclose to CYF where she was living. Similarly, she ignored the referral to Turtle Creek Valley for mental health treatment. Likewise, although Mother was referred to two different mental health evaluators over the course of CYF's involvement, she only completed one evaluation. The second, more recent referrals to Patricia Pepe, Ph.D., the court-appointed psychologist, were incomplete due to Mother's refusal to engage in psychological testing. Mother rescheduled the psychological test twice before simply failing to attend the third appointment and rebuffing Dr. Pepe's attempts to contact her.

As it relates to visitation, Mother maintained consistent weekly two-hour visitations with the boys on Saturday afternoons. However, she was often late, brought snacks inconsistently, and utilized the visitation to vent her dissatisfaction with caseworkers. Additionally, she was preoccupied with her cell phone during visitations and employed the older children, with whom she was also visiting, to supervise the younger children. During the visitations, Mother seldom moved from her seat, and S.M., Jr., P.M., and M.M. generally played amongst themselves independently.

On March 17, 2014, CYF filed petitions to terminate Mother's parental rights to S.M., Jr., P.M., and M.M., respectively. Counsel was appointed, and following an evidentiary hearing wherein the parties, *inter alia*, stipulated to

the admission of an expert report submitted by Dr. Pepe in lieu of her testimony, the orphans' court granted CYF's petitions to terminate Mother's parental rights to the three children pursuant to 23 Pa.C.S § 2511(a)(2), (5), and (8) and § 2511(b) of the Adoption Act. These timely appeals followed. Mother complied with Pa.R.A.P. 1925(a)(2)(i) by filing concise statements of errors complained of on appeal concomitant with her notices of appeal. The Rule 1925 statements raised one issue, which Mother reiterates on appeal as follows:

> Did the trial court abuse its discretion and/or err as a matter of law in concluding that CYF met its burden of proving by clear and convincing evidence that termination of Mother's parental rights would best serve the needs and welfare of the children pursuant to 23 Pa.C.S. §2511(b).

Mother's brief at 9.

We review the determination of the orphans' court for an abuse of discretion. *In re D.C.D.* __ A.3d __, 2014 WL 7089267 (Pa. 2014) ("*In re D.C.D. II*") ("When reviewing a trial court's decision to grant or deny a termination of parental rights petition, an appellate court should apply an abuse of discretion standard, accepting the findings of fact and credibility determinations if they are supported by the record, and reversing only if the trial court made an error of law or abused its discretion."). This is a highly deferential standard and, to the extent that the record supports the court's decision, we must affirm even though evidence exists that would also support a contrary determination. *In re A.S.*, 11 A.3d 473, 477 (Pa.Super.

2010). CYF has the burden of proving the statutory grounds for termination by clear and convincing evidence. *In re Adoption of L.J.B.*, 18 A.3d 1098 (Pa. 2011).

Requests to terminate the parental rights of a biological parent are governed by 23 Pa.C.S. § 2511(a) and (b). Instantly, Mother's argument only implicates the orphans' court analysis pursuant to § 2511(b).[4] That section provides as follows:

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(b).

The crux of Mother's position is that the certified record will not sustain the conclusions that the orphans' court drew from its needs and welfare analysis. Specifically, relying upon her testimony that outlined her perspective of the bond that she shares with her three sons and her

_____

[4] Indeed, Mother acknowledged during the evidentiary hearing that she presently lacked the capacity to parent S.M., Jr., P.M., and M.M. N.T., 7/28/14, at 10.

- 6 -

characterization of the children's interaction with her and their siblings during visitation, Mother opined,

> If the trial [court] had given the serious consideration of the bond and love between Mother and S.M., M.M., and P.M. that the law mandates, [it] should have found that it was not proven by clear and convincing evidence that termination of Mother's parental rights would best serve the needs and welfare of the children as required by 23 Pa.C.S. §2511(b). [The trial court's] decision needlessly deprives the children of the valuable love and affection of Mother and places at risk their relationships with their siblings.

Mother's brief at 19. Thus, based upon her viewpoint that she shares close emotional bonds with S.M., Jr., P.M., and M.M., Mother concludes that the orphans' court erred in terminating her parental rights.

We address whether the trial court abused its discretion in finding that CYF demonstrated by clear and convincing evidence that terminating Mother's parental rights and permanently severing the existing bond between her and the three children would best serve the children's needs and welfare pursuant to § 2511(b). While the Adoption Act does not mandate that the trial court consider the effect of permanently severing parental bonds, our case law requires it where a bond exists to some degree. *See In re E.M.*, 620 A.2d 481, 485 (Pa. 1993).

The extent of the trial court's bond-effect analysis depends upon the circumstances of a particular case. *In re K.Z.S.*, 946 A.2d 753, 763 (Pa.Super. 2008). We have emphasized that, while a parent's emotional bond with his child is a major aspect of the § 2511(b) best-interest analysis,

it is nonetheless only one of many factors to be considered by the trial court when determining what is in the best interest of the child. *In re K.K.R.-S.*, 958 A.2d 529, 535-536 (Pa.Super. 2008). Neither precedent nor statute requires an orphans' court to order a formal bonding evaluation by an expert. *Id*. at 533. Indeed, the mere existence of an emotional bond does not preclude the termination of parental rights. *See In re T.D.*, 949 A.2d 910 (Pa.Super. 2008) (trial court's decision to terminate parental rights was affirmed where court balanced strong emotional bond against parents' inability to serve needs of child).

As we explained in *In re K.Z.S.*, *supra* at 763 (emphasis omitted),

> In addition to a bond examination, the court may equally emphasize the safety needs of the child under subsection (b), particularly in cases involving physical or sexual abuse, severe child neglect or abandonment, or children with special needs. The trial court should also examine the intangibles such as the love, comfort, security and stability the child might have with the foster parent. Another consideration is the importance of continuity of relationships to the child and whether the parent child bond, if it exists, can be severed without detrimental effects on the child. All of these factors can contribute to the inquiry about the needs and welfare of the child.

*See also In re A.S.*, 11 A.3d 473, 483 (Pa.Super. 2010) (orphans' court can emphasize safety needs, consider intangibles, such as love, comfort, security, and stability child might have with the foster parent, and importance of continuity of existing relationships).

Herein, Dr. Pepe was unable to perform interactional evaluations between Mother and the children due to the fact that Mother missed the

appointments scheduled on March 11, and July 9, 2014. *See* CYF Exhibit 7 and Exhibit 7a. Thus, she could not address the children's possible attachment between Mother and the three children. Mother also failed to attend one of two individual psychological evaluations. CYF Exhibit 7a. Following the evaluation that Mother did attend, Dr. Pepe commented that Mother was emotionally aligned with the children, desired reunification, and feared losing the children to adoption. Dr. Pepe also observed that, although cooperative, Mother was guarded and defensive. Mother ignored her parental shortcomings and instability, and she continued to rebuff psychotherapy or treatment. Instead of addressing her parenting deficiencies, Mother blamed her predicament on the "system," *id*., and expressed to Dr. Pepe "that she feels that she is being punished." *Id*. Specifically, Mother believes that CYF and the juvenile court have used her as a scapegoat for their own flaws and that Dr. Pepe took advantage of her vulnerabilities during the evaluation.

In contrast to Mother's self-centered, antagonistic perspective of the evaluative process, the boys' foster parents participated in interactional evaluations with the children on February 25 and July 2, 2014. Dr. Pepe identified "a pervasive happy tone to the family's functioning" and expressed that foster parents were "a positive permanent resources for the children." *See* CYF Exhibit 7a. She noted that the foster parents were exceptionally knowledgeable about the children's development and she observed that the

children had exhibited progress under the foster parents' care. Dr. Pepe commented, however, that following visitations with Mother, the children's behavior degenerated markedly.

The foster parents meet all of the children's needs, and the children look to them for direction and guidance. Dr. Pepe reported that each child responded well to the the foster parents, who balance their attention evenly. She also stated that the boys exhibited multiple behaviors characterizing a positive, primary attachment with the foster parents, whom they refer to as their parents. In sum, Dr. Pepe concluded that it is in the best psychological interest of S.M., Jr., P.M., and M.M. to terminate Mother's parental rights in order to facilitate the adoption by the foster parents.

In rejecting Mother's claim that CYF did not establish by clear and convincing evidence that the termination of parental rights best satisfied the developmental, physical and emotional needs and welfare of S.M., Jr., P.M., and M.M, the orphans' court relied principally on Dr. Pepe's evaluations and recommendation. Essentially, the orphans' court concluded that, to the extent a bond exists between Mother and the children, the bond could be severed without any detrimental effects. After a thorough review of the parties' briefs, pertinent law, and the certified record, we conclude that the Honorable Katherine R. Mulligan cogently addressed Mother's argument, and we affirm on the basis of her well-reasoned opinion entered on October 23, 2014.

Orders affirmed.Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/13/2015

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
ORPHANS' COURT DIVISION

IN RE:

S.M.,
P.M., and
M. M.

Minor.

No. TPR 042-2014
No. TPR 044-2014
No. TPR 045-2014

Superior Court No.
Nos. 1442, 1443, and 1444 WDA 2014

## OPINION

**K.R. MULLIGAN, J.**

T.W., Mother, appeals my August 6, 2014 Order of Court terminating her parental rights to her minor children, S.M, P.M., and M.M.[1]

At the June 30, 2014 termination hearing Caseworker Sharon Martin testified to the history of this case.[2] S.M. was born on January 19, 2008. P.M. was born on January 18, 2010. M.M. was born on February 11, 2011. All three are the biological children of Mother.[3] S.M. and P.M. had previously been removed from Mother's care and returned with intensive services remaining in the home. In February of 2012, M.M. was also adjudicated dependent due to an incident where one of Mother's older children found a firearm and accidentally shot a sibling who, though injured, fortunately survived.[4] The children were not removed at this point, but services were increased. These children's final removal from Mother's care occurred on

---

[1] Following the same termination hearing on August 6, 2014, the parental rights of S.M., Father, were terminated pursuant to 23 Pa.C.S.A. §2511(a) subsections (2), (5), (8) and (b). Father did not file an appeal.
[2] The termination hearing was held during three separate days due to the availability of witness testimony. The hearing began on June 30, 2014, and continued on July 28, 2014 and concluded on August 6, 2014.
[3] Mother has six other children in addition to the three children involved in this case.
[4] After this incident, Father was arrested for a number of charges including prohibited possession of a firearm due to a prior criminal conviction.

1

November 30, 2012 after an in-home worker found the three boys (ages 4, 2, and 9 months) alone in the home.

Caseworker Martin testified that the agency had been involved with the family since 2005, and between 1998 and 2005 there were twelve allegations of neglect with respect to children cared for by Mother.[5] She also testified that Mother had a history of being hostile and uncooperative towards the agency and its workers. At the time of the hearing, Mother's stability, mental heath, and parenting remained part of the agency's concerns with respect to her ability to parent the three boys.[6]

Dr. Patricia Pepe, a licensed clinical psychologist, conducted interactional evaluations between the children and their foster family. While Dr. Pepe was prepared to testify at the June 28, 2014 hearing, all parties stipulated to Dr. Pepe's report and therefore Dr. Pepe did not testify. Dr. Pepe's report included an analysis of an interactional evaluation with the three boys and their foster parents, M.R. and C.R. Dr. Pepe also sought to complete an individual psychological evaluation with Mother and an interactional evaluation with the three boys and Mother which would have been included in this report, but Mother failed to attend the evaluations on the scheduled day of July 9, 2014.

In her discussion of the foster parents' interactional with the children, Dr. Pepe found that all three children have exhibited significant progress. She noted that all three children were making progress in their daycare, preschool, and primary school placements. She also noted that all three children were consistently receiving therapeutic services. For instance, C.R.

---

[5] CYF's involvement with the family began in August 2005, when one of the older siblings broke her arm in a questionable manner.

[6] During a permanency review on December 13, 2013, I made a specific finding that Mother had made no progress towards alleviating the circumstances, which necessitated the original placement because she had not contacted the caseworker and did not complete a mental health evaluation. This finding was made for all three boys. During a permanency review on June 30, 2013, I made the finding that Mother's compliance and progress were minimal.

2

implements therapeutic techniques with the children, including relaxation techniques and positive intervention. During her interactional with the foster parents, she observed that the children recognized M.R. as "poppy" and C.R. as "mommy." Ultimately, Dr. Pepe found that all three children positively interacted with their foster parents and that the tone of the family was a happy one. The foster parents' intervened positively and appropriately during the times when the children behaved difficultly. The children looked to the foster parents for their direction and assistance, and exhibited bright and happy effects.

Dr. Pepe's recommendation was that termination would best serve the needs and welfare of the children, and that the foster parents were a positive permanent resource for the three children. All three children exhibited multiple bonding behaviors to suggest a positive attachment to the foster parents. The foster parents were knowledgeable of each child's progress and needs. Both foster parents were successful in balancing their attention among the children and in implementing techniques to counteract the boys' tendencies to become impulsive and explosive.

During a prior individual evaluation of Mother, which occurred on February 26, 2014, Dr. Pepe made several observations and recommendations regarding Mother. She noted that Mother continued to lack the level of stability necessary to parent the children. She recommended that Mother participate in psychotherapy, but that this recommendation was met with resistance by Mother. She noted that Mother did not necessarily see herself as lacking the stability to parent her children. Instead, she found that Mother believed that she is being "scapegoated" by CYF and the court. Dr. Pepe concluded that it was in the three children's best interests to remain permanently with their foster parents through adoption.

3

Mother also testified at the termination hearing. Mother testified that she has not been diagnosed with having a mental illness and that she performed all her mental health evaluations when she was able to do so. While she expressed no concern for her mental health, Mother still acknowledged that at the time of this hearing she was still incapable of having the children in her care. She testified that, "everything that I've been trying to do has been very unsuccessful, but I've been trying to make steps on my own." (Trial Transcript, July 28, 2014, pg. 10, 4-6). She also testified that she would "need a few months" before she could be in a position where the children could return to her care and live in the same home. (T.T. July 28, 2014, p. 11, 2).

Following the hearing, I granted CYF's TPR petition and found that CYF met its burden of proof by clear and convincing evidence that grounds for termination against Mother existed under 23 Pa.C.S.A. §2511(a) subsections (2), (5), and (8), and that the termination met the needs and welfare of S.M., P.M., and M.M. pursuant to 23 Pa.C.S.A. §2511(b).

In her Concise Statement of Matters Complained of on Appeal for S.M., P.M., and M.M., Mother claims that I abused my discretion and/or erred as a matter of law in concluding that CYF met its burden of proving by clear and convincing evidence that termination of her parental rights would best serve the needs and welfare of the child pursuant to 23 Pa.C.S.A. §2511(b). She argues that such termination of her parental rights immediately, permanently, and unnecessarily deprives S.M., P.M., and M.M. of the love, companionship, and affection of their biological mother. She also argues that termination jeopardizes their relationship with their siblings.

Mother does not appeal my finding that grounds exist for termination of her parental rights under 23 Pa.C.S.A. §2511(a). However, Mother argues that despite there being grounds for termination, that termination was still inappropriate due to a needs and welfare analysis

4

pursuant to 23 Pa.C.S.A. §2511(b). The Pennsylvania Superior Court has repeatedly found "that parent rights are not preserved . . . by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her immediate physical and emotional needs." *In re Adoption of Godzak*, 719 A.2d 365, 368 (Pa. Super. 1998). Mother claims in her 1925(b) statement that termination would immediately, permanently, and unnecessarily deprive the children of their biological mother, however, during her testimony she testified that she was in no position to care for the children at the time of the hearing or even in the near future. She was clearly unprepared to undertake the care of her children, especially after indicating that she would need a few months before the children could live with her again. Further, given the history of this case, until Mother can establish that she will no longer neglect these children's needs, they cannot be returned to her care even if she claims to be in a position for them to return. At this time, the foster parents are ready, willing, and able to permanently parent the children.

In the foster parents' care the children have progressed significantly. Dr. Pepe's report confirmed that the children are in excellent care. I also found that the foster parents have stabilized and nurtured the boys, and in turn, the boys have responded positively to them. Dr. Pepe noted in her report that the foster parents were a positive permanent resource for the boys. I agree that adoption provides the continuity and stability that these boys need during their crucial stages of development. Whether it be a "few months" or one month, these boys can no longer wait for Mother to rectify the circumstances that led to their removal. These children have displayed bonding behaviors that suggest a positive attachment with the foster parents and, through their actions, the foster parents have made it clear that these children will not have to wait for any such love, companionship, and affection in their care.

5

Dr. Pepe's report did not include an interactional between Mother and the three boys due to Mother's incarceration on the scheduled date of the evaluation. Even if the children were to have a positive bond toward Mother, that bond would not be enough to outweigh these children's need for the permanency and stability that the foster parents can provide through adoption. In this case, where the grounds for termination are so overwhelming, the detriment to the children would have to be significant to prevent the termination of Mother's parental rights. Even giving Mother the benefit of the doubt that the interactional evaluation might have demonstrated a positive bond between her and the children, the children's needs and welfare would be best served through termination of her parental rights so that the children can be adopted.

Mother's final argument is that the termination is not appropriate because it would jeopardize the children's relationship with their six other siblings. Upon a review of the record, none of Mother's biological children are in her care. There was testimony that the three children subject to this termination action continued to see their siblings while the termination was pending, usually before visitation with Mother. Following adoption, it is likely the contact between these three children and their other siblings may continue. However, even if sibling contact were not to continue, the needs of these children for permanency and stability would outweigh their need to maintain a relationship with their siblings, several of whom are nearing adulthood. Ultimately though, these three children are thriving in the care of their foster parents, and anything done to delay an adoption would be contrary to their needs and welfare.

For the above reasons, the order of August 6, 2014 should be affirmed.

K.R. Mulligan, J.

Date Filed:     October 23, 2014

6

# APPENDIX B

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
ORPHANS' COURT DIVISION

IN RE:

MILO MOORE,                                    TPR No. 045 of 2014

a minor.

## CONCISE STATEMENT OF MATTERS COMPLAINED OF ON APPEAL

AND NOW, comes Tawanda Moore, Appellant and Birth Mother of the above-named minor child, by and through her attorneys, the ACBF Juvenile Court Project and Raymond N. Sanchas, Esquire, and files the following Concise Statement of Matters Complained of on Appeal pursuant to Pa. R.A.P. 1925(b), averring as follows:

1. The trial court abused its discretion and/or erred as a matter of law in concluding that CYF met its burden of proving by clear and convincing evidence that termination of Mother's parental rights would best serve the needs and welfare of the child pursuant to 23 Pa.C.S. §2511(b). Such termination immediately, permanently and unnecessarily deprives the child of the love, companionship and affection of his biological mother. It also jeopardizes his relationship with his siblings.

*Raymond N. Sanchas*
Raymond N. Sanchas
ACBF Juvenile Court Project

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
ORPHANS' COURT DIVISION

IN RE:

PRINCETON MOORE,                                    TPR No. 044 of 2014

a minor.

## CONCISE STATEMENT OF MATTERS COMPLAINED OF ON APPEAL

AND NOW, comes Tawanda Moore, Appellant and Birth Mother of the above-named minor child, by and through her attorneys, the ACBF Juvenile Court Project and Raymond N. Sanchas, Esquire, and files the following Concise Statement of Matters Complained of on Appeal pursuant to Pa. R.A.P. 1925(b), averring as follows:

1. The trial court abused its discretion and/or erred as a matter of law in concluding that CYF met its burden of proving by clear and convincing evidence that termination of Mother's parental rights would best serve the needs and welfare of the child pursuant to 23 Pa.C.S. §2511(b). Such termination immediately, permanently and unnecessarily deprives the child of the love, companionship and affection of his biological mother. It also jeopardizes his relationship with his siblings.

*Raymond N. Sanchas*
Raymond N. Sanchas
ACBF Juvenile Court Project

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
ORPHANS' COURT DIVISION

IN RE:

SHAWN MOORE, JR.,                                    TPR No. 042 of 2014

a minor.

## CONCISE STATEMENT OF MATTERS COMPLAINED OF ON APPEAL

AND NOW, comes Tawanda Moore, Appellant and Birth Mother of the above-named minor child, by and through her attorneys, the ACBF Juvenile Court Project and Raymond N. Sanchas, Esquire, and files the following Concise Statement of Matters Complained of on Appeal pursuant to Pa. R.A.P. 1925(b), averring as follows:

1.  The trial court abused its discretion and/or erred as a matter of law in concluding that CYF met its burden of proving by clear and convincing evidence that termination of Mother's parental rights would best serve the needs and welfare of the child pursuant to 23 Pa.C.S. §2511(b). Such termination immediately, permanently and unnecessarily deprives the child of the love, companionship and affection of his biological mother. It also jeopardizes his relationship with his siblings.

*Raymond N. Sanchas*

Raymond N. Sanchas
ACBF Juvenile Court Project