J-S23014-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: D.J., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: L.S., FATHER | : | No. 2425 EDA 2014 |

Appeal from the Decree entered July 29, 2014,
Court of Common Pleas, Philadelphia County,
Family Court at No(s): CP-51-AP-0000333-2014,
CP-51-DP-0000245-2013 and FID: 51-FN-373107-2009

---

| | | |
|---|---|---|
| IN THE INTEREST OF: D.J., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: L.S., FATHER | : | No. 2517 EDA 2014 |

Appeal from the Decree entered July 29, 2014,
Court of Common Pleas, Philadelphia County,
Family Court at No(s): 51-FN-373107-2009,
CP-51-AP-0000332-2014 and CP-51-DP-0000244-2013

BEFORE:  DONOHUE, SHOGAN and STRASSBURGER*, JJ.

MEMORANDUM BY DONOHUE, J.:                    **FILED APRIL 28, 2015**

In this appeal, L.S. ("Father") appeals from the decrees entered on July 29, 2014 involuntarily terminating his parental rights to the twin children D.J. and D.J. ("Children").  We affirm.

Children were born in late January 2013.  The day following their birth, the Department of Human Services ("DHS") received a report that their mother could not care for them for various reasons, including mental health issues and lack of housing.  Father was incarcerated at the time of Children's

*Retired Senior Judge assigned to the Superior Court.

birth.[1]  On or about February 1, 2013, DHS arranged to place Children with a maternal cousin upon their discharge from the hospital.  Children have remained in maternal cousin's care ever since.

On February 12, 2013, Children were adjudicated dependent and committed to DHS's custody.  At that time, the trial court found that Father was incarcerated at the Detention Center and ordered that Father be given visitation if recommended by his therapist.  Permanency review hearings occurred on July 23, 2013, October 23, 2013 and February 7, 2014. A goal change hearing occurred on May 6, 2014, at the conclusion of which the trial court ordered DHS to reach out to Father and inquire about the voluntary termination of his rights.  Subsequently, a social worker met with Father in prison and Father refused to agree to the termination of his parental rights. DHS filed its petitions seeking to involuntarily terminate Father's rights on July 7, 2014.  A hearing on this petition was held on July 29, 2014, at the conclusion of which the trial court granted DHS's petitions and terminated Father's parental rights.  This timely appeal followed, in which Father presents the following issues for our review:

> 1. Did the [trial] court err in finding sufficient facts
>    under 23 [Pa.C.S.A.] § 2511(a) to terminate
>    [Father's] rights?

---

[1] In 2007, Father was convicted of indecent assault of a minor less than thirteen years of age, and as result, is subject to certain sex offender registration requirements.  At the time the children were born, Father  was incarcerated for violating these registration requirements.

2. Did the [trial] court err in terminating [Father's] parental rights without finding or considering whether [DHS] made reasonable efforts to reunify [Father] with his children?

3. Was the lower court required to follow this Court's ruling in *In re D.C.D.*, 91 A.3d 173 (Pa. Super. [] 2014)[,] appeal granted, 93 A.3d 802 (Pa. [] 2014) and rev'd, *In re D.C.D*., [105 A.3d 662 (Pa. 2014)]?

Father's Brief at 6.[2]

Our review of a decree terminating parental rights is highly deferential to the trial court. As this Court has stated:

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. … The trial court is free to make all credibility determinations, and may believe all, part, or none of the evidence presented. If the findings of the trial court are supported by competent evidence, we will affirm even if the record could also support the opposite result.

*In re T.M.T.*, 64 A.3d 1119, 1124 (Pa. Super. 2013) (citations omitted).

Section 2511 of the Adoption Act governs termination of parental rights. Under Section 2511, the trial court must engage in a bifurcated process. *In re C.L.G.*, 956 A.2d 999, 1004 (Pa. Super. 2008). The initial

---

[2] We have reordered Father's issues for purposes of clarity.

focus is on the conduct of the parent, and the burden of proof is on the petitioner to establish by clear and convincing evidence the existence of grounds for termination under Section 2511(a).[3] *Id.* If the trial court finds that termination is warranted under Section 2511(a), it must then turn to Section 2511(b), and determine if termination of the parent's rights is in the child's best interest. *Id.*

Father first challenges the trial court determination that termination was proper under Section 2511(a). The trial court found that termination was proper under Sections 2511(a)(1),(2),(5) and (8). As we need only agree with one subsection of this provision, we focus on (a)(1), which provides as follows:

> **§ 2511. Grounds for involuntary termination**
>
> **(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S.A. § 2511(a)(1).

---

[3] Where the trial court has found that termination is appropriate under more than one sub-section of Section 2511(a), "this court need only agree with the trial court's decision as to any one subsection in order to affirm the termination of parental rights." *In re T.M.T.*, 64 A.3d at 1125.

Under this provision, there is no requirement that both a settled purpose to relinquish parental claim and a failure to perform parental duties must be found in order to find termination proper; rather, "parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child **or** fails to perform parental duties." ***In re Adoption of Charles E.D.M., II***, 708 A.2d 88, 91 (Pa. 1998) (emphasis in original). Furthermore,

> [a]lthough it is the six months immediately preceding the filing of the petition that is most critical to the analysis, the court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

***In re K.Z.S.***, 946 A.2d 753, 758 (Pa. Super. 2008).

This Court has discussed the concept of parental duties as follows:

> In ***In re Burns***, [] 379 A.2d 535 ([Pa.] 1977), the [Pennsylvania] Supreme Court stated:
>
> > There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.

> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.
>
> Because a child needs more than a benefactor, parental duty requires that a parent "exert himself to take and maintain a place of importance in the child's life".

*Id.* at 540 (citations omitted).

> A parent is required to exert a sincere and genuine effort to maintain a parent-child relationship; the parent must use all available resources to preserve the parental relationship and must exercise "reasonable firmness" in resisting obstacles placed in the path of maintaining the parent-child relationship. *In re Shives*, [] 525 A.2d 801, 803 ([Pa. Super.] 1987). This court has repeatedly recognized that "parental rights are not preserved ... by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her immediate physical and emotional needs." *In re Adoption of Godzak*, 719 A.2d 365, 368 (Pa. Super. 1998) (citation omitted).

*In re C.M.S.*, 832 A.2d 457, 462 (Pa. Super. 2003).

The trial court found that Father utterly failed to perform his parental duties to Children throughout their lives:

> The record and testimonies of the witnesses established that at the time of [] Children's birth … Father was already incarcerated (N.T. 7/29/14, pgs. 10, 11). Father continues to be incarcerated at SCI Waymart with a maximum of two to four years sentence for failure to register as a sex offender (N.T. 7/29/14, pgs. 4, 13, 14, 17). After his release, he will have to be on probation for five years (N.T.

- 6 -

7/29/14, pgs. 13, 14). Since … [the] birth of [] Children, until May of 2014, [the] date [o]n which Father wrote a letter to the CUA social worker, Father never contacted [] Children nor did he inquire about them (N.T. 7/29/14, pgs. 12,13). Father has an affirmative duty to reach out to DHS and CUA (N.T. 7/29/14, pg. 8). Father admitted that he never attempted to outreach DHS (N.T. 7/29/14, pg. 11) or try to establish contact with [] Children's mother or other relatives (N.T. 7/29/14, pg. 12). Father argued that he was not able to call due to the fact that he has no job or money (N.T. 7/29/14, pg. 12), that he could not write from jail (N.T. 7/29/14, pg. 16), that he did not have family members['] telephone numbers (N.T. 7/29/14, pg. 12), and that he did not have DHS address (N.T. 7/29/14, pg. 16). Father['s] excuses are without merit since Father received a package from DHS while he was at the Camp Hill Prison (N.T. 7/29/14, pgs. 14-15) as far back as February[] 2013, when [] Children came into care. Father made no effort to establish contact with DHS. Father also admits he received DHS correspondence sometime in September 2013, but he made no effort to contact DHS (N.T. 7/29/14, pgs. 15-17). Father never asked for visitation nor did he request a video visitation (N.T. 7/29/14, pgs. 8-10). Father never informed [the] CUA social worker about the fact that he had a therapist in order to obtain visitations (N.T. 7/29/14, pg. 9). Furthermore, Father has never provided any care for [] Children[.] (N.T. 7/29/14, pg. 4).

… Father has continually failed to perform his parental duties toward [] Children, and never utilized any of the available resources to foster a close relationship with [] Children. Father never requested visitations (N.T. 7/29/14, pgs. 8-9) and only wrote to the CUA social worker in May 2014 (N.T. 7/29/14, pgs. 11-12), one year and four months after [] Children's birth. As a result, DHS has met its burden under §2511 (a)(1)[.]

Trial Court Opinion, 12/22/14, at 4-5.

We have reviewed the record and conclude that the trial court's findings are supported thereby and that it did not err in applying the law. Accordingly, we have no basis upon which to disturb its determination. *In re T.M.T.*, 64 A.3d at 1124.[4]

Father's second and third issues are related and so we address them together. Father argues that the trial court was required to consider whether DHS made reasonable efforts to reunify Father with Children before terminating his rights, that it did not do so, and therefore that the Court erred. Father's Brief at 20-24. Father bases this argument on the holding of this Court's decision in *In re D.C.D.*, 91 A.3d 173 (Pa. Super. 2014), rev'd, 105 A.3d 662 (Pa. 2014). As Father acknowledges, in December 2014, the

---

[4] Although not explicitly raised by Father on appeal, we note that our review reveals that the trial court did not err in its determination that DHS met its burden to prove that termination was warranted under Section 2511(b). When considering the needs and welfare of a child pursuant to the Section 2511(b) inquiry, the trial court must consider whether termination of parental rights would best serve the developmental, physical and emotional needs of the child. *In re C.M.S.*, 884 A.2d 1284, 1286-87 (Pa. Super. 2005). "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *Id.* at 1287 (citation omitted). The trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id.* In this case, the trial court found that there is no bond between Father and Children, as they have never met, and that Children have "a mother/child bond" with their maternal cousin. Trial Court Opinion, 12/22/14, at 8. The trial court concluded that Children will not suffer irreparable harm if Father's rights are terminated, and that they would be harmed if removed from maternal cousin because she is the only family they have ever known. *Id.* The record supports the trial court's findings, *see* Recreated Record in Lieu of Recording pursuant to Pa.R.A.P. 1923, 11/5/14, ¶¶ c-p, and so we find no error with the trial court's conclusion.

Pennsylvania Supreme Court reversed our decision in **D.C.D.** and held that there is no requirement that an agency must provide reasonable efforts to a parent prior to granting a petition seeking the termination of that parent's rights.[5]  Nonetheless, Father urges us to apply the holding from this Court's decision in **D.C.D.**  Father's Brief at 16-19. Yet in making this argument, Father is ignoring the fact that the trial court explicitly found that DHS did make reasonable efforts to reunify Father with Children.  **See** Trial Court Opinion, 12/22/14, at 8 (stating that it found DHS made reasonable efforts and detailing those efforts individually).  Thus, Father's argument has no basis and cannot succeed.[6]

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/28/2015

---

[5] **See In re D.C.D.**, 105 A.3d 662, 675 (Pa. 2014).

[6] Seemingly cognizant of this, Father sets forth another issue in which he asks this Court to review the trial court's determination that DHS provided reasonable reunification efforts.  Father's Brief at 24.  Father did not include this issue in his statement of matters complained of on appeal, and so he has waived it for purposes of appeal. **See**  Pa.R.A.P. 1925(b)(4)(vii).