J-S42030-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN RE: ADOPTION OF: L.C., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: K.C., BIRTH MOTHER | |
| | No. 63 WDA 2016 |

Appeal from the Order Entered December 16, 2015
In the Court of Common Pleas of Allegheny  County
Orphans' Court at No(s): CP-02-AP-0000153-2015

BEFORE:  SHOGAN, J., OTT, J., and FITZGERALD, J.[*]

MEMORANDUM BY OTT, J.:                    **FILED JUNE 07, 2016**

K.C. ("Mother") appeals from the order entered December 16, 2015, in the Court of Common Pleas of Allegheny County, which involuntarily terminated her parental rights to her minor daughter, L.C. ("Child"), born in April of 2012.[1]  After a careful review of the record, the parties' briefs, and the applicable law, we affirm on the basis of the orphans' court's opinion.

The orphans' court has aptly summarized the factual and procedural history of this case, and we adopt its recitation.  **See** Orphans' Court

---

[*] Former Justice specially assigned to the Superior Court.

[1] The order also terminated the parental rights of Child's putative father, T.W., and the parental rights of any unknown father that Child may have. Neither T.W., nor any other alleged father, has filed an appeal from the order terminating his parental rights.

Opinion, 2/11/2016, at 1-3. Importantly, the Allegheny County Office of Children, Youth and Families ("CYF") filed a petition to terminate Mother's parental rights involuntarily on September 23, 2015. A termination hearing was held on December 14, 2015, during which the orphans' court heard the testimony of CYF family services caseworker, Stacey Policicchio. In addition, the parties stipulated to the admission of a psychological evaluation prepared by Terry O'Hara, Ph.D.[2] *See* N.T., 12/14/2015, at 3; Exhibit 4 (Psychological Evaluation Report). Following the hearing, on December 16, 2015, the orphans' court entered its order terminating Mother's parental rights to Child. Mother timely filed a notice of appeal on January 12, 2016, along with a concise statement of errors complained of on appeal.

Mother now raises the following issue for our review. "Did the [orphans'] court abuse its discretion and/or err as a matter of law in concluding that [CYF] met its burden of proving that termination of [] Mother's parental rights would best serve the needs and welfare of the child pursuant to 23 Pa. C.S. § 2511(b)[?]" Mother's brief at 5.

When considering an appeal from an order terminating parental rights, we are guided by the following standard.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and

---

[2] Mother did not appear at the termination hearing. Mother's counsel did appear at the hearing, and conducted cross-examination of Ms. Policicchio.

credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted).

The orphans' court terminated Mother's parental rights pursuant to Sections 2511(a)(2), (5), and (b), which provide as follows.

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\*\*\*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\*\*\*

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\*\*\*

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (5), and (b).

In the instant matter, the Honorable Kathleen R. Mulligan has authored a thorough and well-reasoned opinion in support of her decision to terminate Mother's parental rights. *See* Orphans' Court Opinion, 2/11/2016, at 5 (unnumbered pages) (finding that Mother is incapable of providing for Child's needs and welfare, as evidenced by her past behavior and her failure to appear at the termination hearing). Critically, Judge Mulligan accepted the expert opinion of Dr. O'Hara that the benefits of adoption would outweigh any detriment that Child would suffer as a result of the termination. *Id.* at 5; Exhibit 4 (Psychological Evaluation Report), at 6. Dr. O'Hara was unable to analyze the bond between Child and Mother, because Mother failed to participate in his psychological evaluation. Exhibit 4 (Psychological Evaluation Report), at 5. However, Dr. O'Hara explained that there is no indication that Mother is capable of providing for Child's needs and welfare, given the information provided to him by CYF. *Id.* Dr. O'Hara also observed that Child appears to have a secure attachment with her foster parents. *Id.* at 5-6. Child's foster parents display strong parental skills, and are able to provide Child with a safe, secure, and stable environment. *Id.*

As we agree with the sound reasoning of the orphans' court, we adopt the orphans' court's opinion as dispositive of the issue presented in this appeal, and we affirm the order terminating Mother's parental rights. In the event of future proceedings, the parties are directed to attach a copy of the

orphans' court's February 11, 2016 opinion to this decision. The opinion should be redacted to exclude the birthdays of Child and his sibling, L.G.[3]

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>6/7/2016</u>

---

[3] We note that Child's guardian *ad litem* has filed a brief in support of the order terminating of Mother's parental rights.

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY,
PENNSYLVANIA

IN RE: ADOPTION OF:

L.C.

a minor.

ORPHAN'S COURT DIVISION

CP-02-AP-0000153-2015

Superior Court No.
63 WDA 2016

## Opinion

K.R. Mulligan, J.

K.C. (Mother), appeals my December 14, 2015, Order of Court terminating her parental rights to her minor child L.C. (Child).

At the December 14, 2015 hearing, caseworker Stacey Policicchio testified to the history of the case. The Child was born on April●, 2012, to Mother. The alleged father of the child is T.W. (Father) and the petition included an Unknown Father[1]. The Mother has a son L.G. born on September● 2005[2]. Children Youth & Families, (CYF) first had contact with the Mother in October of 2005, and then again on December of 2006, and June of 2007.

Stacey Policicchio testified that on October 6, 2012, CYF opened a case because of concerns with the mother's drug and alcohol use as well as the state of her mental health. Stacey Policicchio testified that the Mother had taken the children to Children's Hospital because she said they were coughing and having nosebleeds. Both L.C. and

---

[1] Neither Father has appealed the decision terminating parental rights.
[2] L.G. has been placed with his biological father.

L.G. were admitted to Children's Hospital. During the interview with CYF, Mother was described as very suspicious and she was afraid that people were after her. Stacey Policicchio testified that the children were removed on October 7, 2012, when Mother went to Western Psych. The Child was adjudicated dependent on November 9, 2012, and the child was placed in foster care with supervised overnights and permission to return to Mother's care provided Mother remained in Sojourner House, a residential drug and alcohol treatment facility. Mother was unsuccessfully discharged from Sojourner House and Family Links (another residential drug and alcohol facility). Nonetheless, it did not appear that Mother had relapsed. Subsequently, the child was returned to Mother's care and the dependency case was closed an April 16, 2014.

Stacey Policicchio testified that on September 19, 2014, CYF received a report regarding mother possibly being under the influence. The home was in deplorable condition and the U.S. Marshall had gone to the house to serve a warrant. Mother was evicted from her housing and went into treatment at Family Links in September 2014. On January 26, 2015, Mother was unsuccessfully discharged from Family Links. On March 13, 2015, the Child was removed from Mother because the Child was left by Mother with family friend. On March 27, 2015, the Child was again determined to be dependent and it was ordered that she remain in placement with the family friend. The Child has remained in placement with this family friend since that date and this placement is the proposed adoptive home. The last visit that Mother had with the Child was on May 10, 2015.

CYF developed a service plan for Mother to address her drug and alcohol issues which was never successfully completed. Stacey Policicchio testified that Mother was

ordered to have a drug and alcohol evaluation with POWER, an agency providing drug and alcohol services, and to follow recommendations. On June 8, 2015, Mother came to the CYF office after being released from jail and completed the POWER evaluation and was recommended for partial hospitalization. On July of 2015, Mother reported not wanting to complete the recommendations. On August 10, 2015, while incarcerated again, Mother reported not wanting to complete the recommendations.

Terry O'Hara Ph.D., a licensed Psychologist, conducted interactional evaluations between the Child and family. While Dr. O'Hara was prepared to testify at the December 14, 2015 hearing, all parties stipulated to Dr. O'Hara's report and therefore, Dr. O'Hara did not testify, but his reports were admitted into evidence.

Dr. O'Hara's reports concluded that the Father and Mother are in no position to reasonably care for the Child's needs and welfare at this time. If the Child were placed with Mother at this time, she would be at risk for homelessness, exposure to significant instability, and exposure to substance dependence by the Mother

Mother, Father, and Unknown Father failed to appear at the December 14, 2015, termination hearing although Mother was represented. Father and Unknown Father's whereabouts are unknown.

Following the hearing, I granted CYF's TPR petition and found that CYF met its burden of proof by clear and convincing evidence that grounds for termination against the Mother existed under 23 Pa. C.S.A §2511(a) subsections (2), (5). I also found that CYF met its burden of proof by clear and convincing evidence that grounds for termination against both Father and Unknown Father existed under 23 Pa. C.S.A §2511(a)

subsections (1), (2), (5), and that terminations met the needs and welfare of the child pursuant to 23 Pa. C.S.A §2511(b)

In the Mother's Concise Statement of Matters Complained of on Appeal, Mother claims that the trial court abused its discretion and/or erred as a matter of law in concluding that Allegheny County Children, Youth and Families met its burden of proving that termination of Birth Mother's Parental Rights would meet the needs and welfare of the child pursuant to 23 Pa. C.S.A §2511(b), by clear and convincing evidence.

Mother does not appeal my findings that grounds exist for termination of her parental rights under Pa. C.S.A §2511(a). However, Mother argues in her Concise Statement of Errors Complained of on Appeal that despite not appealing the grounds for termination, that the termination was inappropriate due to a needs and welfare analysis pursuant to Pa. C.S.A §2511(b). The Pennsylvania Superior Court has repeatedly found "that parent rights are not preserved...by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her immediate physical and emotional needs." *In Re Adoption of Godzak*, 719 A.2d 365, 368 (Pa. Super. 1998).

The Supreme Court has instructed us that [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." Pa. C.S.A §2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A3d 781, 791 (Pa.Super.2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa.1993)], this Court held that the

determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently serving the parental bond. *In re K.M.,* 53 A3d at 791. *In re: T.S.M.,* 620 Pa. 602, 71 A.3d 251, 267 (2013).

It is clear that the Mother, Father, and Unknown Father are in no position to meet the needs and welfare of the child as evidenced by their past behavior as well as their failure to appear at the December 14, 2015, termination hearing.

Stacey Policicchio testified that she had the opportunity to observe the Child in the pre-adoptive foster home and she is doing "really well". Stacey Policicchio further testified that the Child's is very well adjusted and she has no developmental problems.

In Dr. O'Hara's opinion, the pre-adoptive foster parents exhibit stability and strong parenting skills warranting the adoption of the Child. Finally, it is Dr. O'Hara's opinion that the benefits of adoption for the child such as safety, security and stability outweigh any potential deficits in the termination of parental rights for the Child's parents.

For the above reasons, the order of December 14, 2015, should be affirmed.


Date: February 11, 2016