J-A07014-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF S.M.G., A MINOR APPEAL OF R.G., FATHER | : : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | No. 1331 MDA 2020 |

Appeal from the Decree Entered September 29, 2020
In the Court of Common Pleas of Luzerne County Orphans' Court at
No(s): A-8899

BEFORE: BOWES, J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BOWES, J.: **FILED: MAY 11, 2021**

R.G. ("Father") appeals from the decree dated and entered September 29, 2020, in the Court of Common Pleas of Luzerne County, granting the petition of the paternal aunt J.G.[1] and her wife, L.B. (collectively "Petitioners") and involuntarily terminating his parental rights to his minor child, S.M.G., a female born in December of 2017, pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a)(2), (5), and (b).[2] After review, we affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] While Father does not challenge the standing of J.G. and L.B. to file a petition to terminate his parental rights, we observe that the Adoption Act extends standing to individuals who have custody or *in loco parentis* status and have filed a report of intention to adopt. ***See*** 23 Pa.C.S. § 2512(a)(3).

[2] By separate decree dated and entered the same date, the court involuntarily terminated Mother's parental rights. Mother did not file an appeal or participate in the instant appeal.

The orphans' court summarized the factual history as follows:

It is unrebutted that the Petitioners were informal kinship providers for the minor child, [S.M.G.,] as a result of a finding of dependency. [S.M.G.] was born with illicit substances in her system, suffered from withdrawal[,] and was required to receive morphine for three weeks as a result. Mother was incarcerated at Luzerne County Correctional Facility prior to [S.M.G.]'s birth and after [S.M.G.]'s birth. After birth, [S.M.G.] was released to the [f]ather at his home in Wilkes-Barre, Pennsylvania.

On February 7, 2018, Children and Youth discovered that Father tested "positive" on two separate occasions for illicit substances as a result of his participation in "pre-trial services" relating to a separate legal action. The parents agreed to enter into a "safety plan" permitting [S.M.G.] to reside with the Petitioners, the informal kinship providers, in light of Father's positive toxicology screens and Mother's incarceration.

Orphans' Court Opinion, 11/16/20, at 3-4 (citations to record omitted).

Subsequently, following the filing of a dependency petition, on March 14, 2018, the court adjudicated S.M.G. dependent and placed custody with Petitioners. N.T., 2/11/20, at 20-21. Approximately one year later, on March 21, 2019, court supervision was terminated, the dependency case closed, and custody confirmed in Petitioners. *Id*. at 33-34, 76-77.

On June 10, 2019, Petitioners filed petitions for the involuntary termination of Father's and Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(2), (5), (8), and (b). The orphans' court held a termination hearing on February 11, 2020, and July 6 and 8, 2020.[3] Father and Mother were present and represented by counsel. At the hearing, Petitioners testified on

_____

[3] The July 6 and 8, 2020 hearings were conducted virtually due to COVID-19.

their own behalf. They likewise presented the testimony of Rachel Homitz, Luzerne County Child and Youth Services, Case Worker; Scott Carey, Wyoming Valley Alcohol and Drug Services, Assistant CEO and Acting Treatment Supervisor; and Mary Sue Sack, Family Service Association, Case Manager, Intensive Family Reunification Services.[4] In addition, Father and Mother testified on their own behalf. Notably, S.M.G. was represented by a guardian *ad litem*/legal counsel.

By decree entered September 29, 2020, the orphans' court involuntarily terminated the parental rights of Father pursuant to 23 Pa.C.S. § 2511(a)(2), (5), and (b). Thereafter, Father, through appointed counsel, filed a timely notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

On appeal, Father raises the following issue for our review:

A. Whether the [orphans'] court erred in terminating parental rights and/or abused its discretion in giving primary consideration pursuant to the factors set forth in 23 [Pa.C.S.

---

[4] Petitioners additionally presented Exhibits P-1 through P-13, which were admitted. **See** N.T., 7/8/20, at 45; N.T., 7/6/20, at 91; N.T., 2/11/20, at 83, 122. The court further took judicial notice of the dependency record and made the dependency record part of the record in the instant matter. **See** N.T., 2/11/20, at 3-6. Upon review, these documents were not included as part of the certified record. Attempts to informally obtain same were unsuccessful. The court further took judicial notice of criminal record summaries as to Father, which were also not included as part of the certified record. **Id**. Nevertheless, as Father only challenges the termination of his parental rights pursuant to § 2511(b), we do not find the absence of such documentation a hindrance to this Court's disposition.

§] 2511(b)(developmental, physical, and emotional needs and welfare of the child) because testimony presented at trial established a strong parent-child bond that would be detrimental to the physical, emotional, and general well-being of the minor child if the bond were to be severed?[5]

Father's brief at 3 (unnecessary capitalization omitted).

In matters involving involuntary termination of parental rights, our standard of review is as follows:

> The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id.* "[A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id.* The trial court's decision, however, should not be reversed merely because the record would support a different result. *Id.* at 827. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. *See In re R.J.T.*, [9 A.3d 1179, 1190 (Pa. 2010)].

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all

---

[5] We observe that Petitioners raise several claims of waiver in their brief. While Father states his issue somewhat differently than in the Rule 1925(b) statement filed with his notice of appeal, we find that he has preserved a sufficiency of the evidence challenge with respect to § 2511(b). Despite being stated broadly, we are able to readily discern that Father is disputing the sufficiency of evidence as to the needs and welfare of the child under § 2511(b). *See Commonwealth v. Laboy*, 936 A.2d 1058, 1060 (Pa. 2007) (holding that this Court erred in determining that the appellant had failed to adequately develop, in his Rule 1925(b) statement, the claim that the evidence was insufficient to support his conviction). Likewise, we decline to find waiver on the basis of the alleged deficiencies in Father's brief as we are able to perform meaningful review of Father's claim.

credibility determinations and resolve conflicts in the evidence." *In re M.G. & J.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted). "[I]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

The termination of parental rights is governed by § 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, and requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [§] 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to [§] 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted). We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*) (quoting *Matter of Adoption of Charles E.D.M. II*, 708 A.2d 88, 91 (Pa. 1998)).

Here, Father does not challenge the orphans' court's finding of grounds for termination under § 2511(a). We, therefore, analyze the court's termination pursuant to § 2511(b) only, which provides as follows:

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(b).

With regard to § 2511(b), our Supreme Court has stated as follows:

[I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa.Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791. However, as discussed below, evaluation of a child's bonds is not always an easy task.

*In re T.S.M.*, *supra* at 267. "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the

circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa.Super. 2008) (citation omitted).

When evaluating a parental bond, "[T]he court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, § 2511(b) does not require a formal bonding evaluation." *In re Z.P.*, 994 A.2d 1108, 1121 (Pa.Super. 2010) (internal citations omitted).

Instantly, in finding that the termination of Father's parental rights favors S.M.G.'s needs and welfare under § 2511(b), the orphans' court reasoned:

> The term "needs and welfare" of a child refers to both tangible and intangible needs. The intangible needs of a child include love, comfort, security and closeness. [*In re Matsock*, 611 A.2d 737, 747 (Pa.Super. 1992)]. There is nothing in the record that shows the natural [f]ather is presently capable of providing a safe, secure environment for [S.M.G.].
>
> Parental duty is best understood in relation to the needs of a child. These needs, both physical and emotional, cannot be met by a mere passive interest in the development of the child. Meeting a child's needs is a positive duty that requires affirmative performance. [*In re Shives*, 525 A.2d 801, 802 (Pa.Super. 1987)].
>
> A non-custodial parent has a duty to exert himself to take and maintain a place of importance in the child's life. [*In re Adoption of M.J.H.*, 501 A.2d 648 (Pa.Super. 1985)]. A parent must demonstrate a continuing interest in the child and make a genuine effort to maintain communication and association with the child.
>
> When considering the needs and welfare of the child, it is also important for the court to consider the bond between the parent and the child because severance of a strong parental bond can have a detrimental impact on the child. *Matsock*, *supra*.

[L.B.] testified that [S.M.G.] has been residing in her residence with [J.G.] for two and a half (2 ½) years. [L.B.] indicated that [S.M.G.] was seven (7) weeks old when she came to her home. [L.B.] testified that [S.M.G.] attends family trips with them such as trips to Knoebels, an amusement park in a neighboring county, and a trip to the beach. [S.M.G.] is very much integrated into the [Petitioners'] extended families. [S.M.G.] has many cousins and uncles that she sees during family functions.

[L.B.] testified that she and [J.G.] provide [S.M.G.] with food, shelter and toys. [L.B.] prepares breakfast and lunch for [S.M.G.] and takes her outside to play when the weather is warm. According to [L.G.], [S.M.G.] is happy at home. She plays with her dolls and loves to build houses and color. She also likes to play "Hide and Go Seek." [J.G.] testified that she takes [S.M.G.] outside to ride her tricycle, her wagon, and her toy car. Furthermore, [L.B.] testified that in the past year and a half, she and [J.G.] have been taking [S.M.G.] regularly for appointments to the pediatrician and the dentist. Based upon the Petitioners' testimony, the court finds that the [Petitioners] meet [S.M.G.]'s physical needs.

The court also finds that the Petitioners meet [S.M.G.]'s developmental needs. [J.G.] testified that she usually puts [S.M.G.] to bed. She gives [S.M.G.] a bath at night, and then she reads [S.M.G.] books prior to bed time[,] which [S.M.G.] enjoys. [J.G.] also testified that [S.M.G.] had early intervention sessions for her speech. [J.G.] discovered that although there was no delay in [S.M.G.]'s speech, the teacher felt that [S.M.G.] understood so much more than she was able to express. Therefore, after a few scheduled sessions, [S.M.G.]'s speech improved in which she was able to make sentences and use three (3) syllable words. [L.G.] testified that [S.M.G.] attends daycare during the day when she and [J.G.] are at work.

The [c]ourt also finds that the [Petitioners] meet [S.M.G.]'s emotional needs. [J.G.] recalls the first time that [S.M.G.] pointed at her and [L.B.] and called them both "mommies." [L.B.] testified that when [S.M.G.] approximately 8-10 months old, she started calling her, "Mom." Then[, at] approximately fourteen (14) months . . ., she started calling [J.G.] "mom." [L.B.] testified that in September of 2019, the last time the parents saw [S.M.G.], [S.M.G.] kept coming over to [L.B.] to be near her and away from her natural parents. Both [L.B.] and [J.G.] testified that they hold

- 8 -

S.M.G. out as their daughter in the community. [L.B.] testified that[,] in the event the [c]ourt grants the petition to terminate the parents' parental rights, she plans on adopting S.M.G.

[J.G.] also testified that she believes she and [L.B.] have a very close bond with [S.M.G.]. [L.B.] testified that [S.M.G.] does not ask to see her [f]ather. Ms. Sack testified that she observed visits between the natural parents once per week over a one[-]year period. Ms. Sack described the [natural] parents as very loving. According to Ms. Sack, based upon her observation of forty-three (43) visits between the natural parents and [S.M.G.], over the course of the year, she found that [S.M.G.] was more bonded with the informal kinship parents than the natural parents.

Ms. Sack testified that during her supervised visits between December of 2018 and February of 2019, she believed the [f]ather appeared to be under the influence of substances on these occasions.

[L.B.] stated that [S.M.G.] is not demonstrating any negative effects as a result of not seeing her parents because she does not recognize them as her parents. [J.G.] testified that she believes that that in the event the court terminates the parental rights of the parents to [S.M.G.], S.M.G. will be able to continue in a stable and predictable environment.

Based upon the testimony of [L.B.], [J.G.], and Ms. Sack, the court finds that the termination of Father's parental rights would best serve the needs and welfare of the child.

Orphans' Court Opinion, 11/16/20, at 20-23 (citations to record omitted).

As such, in terminating Father's parental rights, the court concluded:

This court finds that Father cannot offer his child the fulfillment of basic physical, developmental and emotional needs. Father has been given ample time to address and remedy his challenges, but has failed to successfully do so. The [c]ourt finds that he is not able to remedy the incapacity which gave rise to placement. In stark contrast, the [Petitioners] have amply demonstrated that they meet the physical, developmental and emotional needs of the minor child, S.M.G. The child has thrived under their care. [S.M.G.] needs consistency and deserves a permanent home with loving capable parents. The only way to provide this is to terminate the rights of the [f]ather. Clearly[,] it is in [S.M.G.]'s best interest to do so.

*Id*. at 24-25.

Father argues that CYS failed to establish that it would not be detrimental to S.M.G. to terminate Father's parental rights. Father's brief at 17. In so arguing, Father points to Petitioner's failure to promote contact and a relationship between Father and S.M.G. which evidenced a nefarious intent. *Id*. at 18, 20. He continues, "The lack of meaningful intent to provide for interactions between [S.M.G.] and Appellant on the part of the Petitioners shows not only their intent to adopt [S.M.G.] immediately, but also their willful intent to deprive [Father] of his parental rights and alleviate his parental duties." *Id*. at 20. Father asserts that, had he known of Petitioners' intentions to terminate his parental rights and adopt S.M.G. upon the voluntary transfer of custody, he would have followed through with participation in the dependency matter. *Id*. at 19. Father maintains that he and S.M.G. had a bond, and severing that bond through termination would be detrimental. He further notes that the restrictions imposed by Petitioners impacted the strengthening of this bond. *Id*. at 20-22. Father states:

> Prior to [S.M.G.]'s placement in February 2018 with the Petitioners, she resided with [Father] and the natural mother for several months. For that time[-]period, a bond existed between [Father] and his daughter in that he and the natural mother provided all parental duties for [S.M.G.] and took care of her mental, physical, and emotional well-being. It is clear that [Father] shares a strong and loving bond with [his] child and that it would be detrimental to separate parent and child in this instance. [Father] was not afforded visitation with his child due to the actions of the Petitioners. If this Decree is upheld, [S.M.G.] will not have had the ability to have the interactions with her natural parents as other children may have. That is due mostly in

part to the choices to restrict and limit visitation on behalf of the Petitioners. It is unfortunate that an even stronger bond between [S.M.G.] and [Father] could not be established due to the actions and/or inactions of the Petitioners. Finally, [Father] is prepared to meet all of [S.M.G.]'s needs and provide parental care to [S.M.G.] should she be returned to his care.

The trial court has erred in finding that [Father]'s parental rights should be terminated. The [c]ourt was given evidence that there is a strong bond that would be detrimental to the best interests of the child if it were severed. Further, [Father] was denied meaningful visitation and contact with his daughter once custody was transferred to his sister and her wife. For that reason, [S.M.G.] should be in returned to the custody of [Father] and the [c]ourt's Decree of September 29, 2020 be vacated.

*Id*. As such, Father concludes:

The [orphans'] [c]ourt erred by finding that the best needs and welfare of the minor children pursuant to 23 [Pa.C.S. § 2511(b)] would be met if termination was granted. [Father] is a loving father who shares a strong parent-child bond with his child. When [S.M.G.] was in his care, he provided the best for [her] that he could by performing all of the necessary parental duties one could be expected to perform. It is also important to reiterate that this strong parent-child bond could not have been extended and made even stronger due to the Petitioner[s'] choices not to subject [S.M.G.] to visitations or even any contact with [Father]. Petitioners evidenced no basis for these decisions.

For the reasons stated above, the [orphans'] [c]ourt erred in granting the termination of [Father]'s parental rights. This Court should reverse the decision of the [orphans'] [c]ourt and vacate the order granting the termination of [Father]'s parental rights.

*Id*. at 22-23.

Upon review, the certified record supports the orphans' court's finding that S.M.G.'s developmental, physical, and emotional needs and welfare favor the termination of Father's parental rights pursuant to § 2511(b). There was sufficient evidence to allow the orphans' court to make a determination of

S.M.G.'s needs and welfare, and as to the existence of a bond between Father and S.M.G. that, if severed, would not have a detrimental impact on her. Thus, as confirmed by the record, termination of Father's parental rights serves S.M.G.'s developmental, physical and emotional needs and welfare.

Significantly, at the time of the conclusion of the termination hearing, S.M.G. had been in Petitioner's custody for two and one-half years, since she was seven weeks old. N.T., 7/8/20, at 4-5. As described by L.B., "We're her moms. We've been her moms. We've been parents to her since she was seven weeks old and we've been caretakers to her." *Id*. at 17. Caseworker, Rachel Homitz, noted that S.M.G. was happy, healthy, and doing well, and bonded with Petitioners. N.T., 2/11/20, at 41-42. Ms. Homitz stated, "Every time I would go out[, S.M.G.] would reach for [Petitioners], she would be laughing, she'd be smiling she would roam around the house when she was able to freely." N.T., 2/11/20, at 42. Petitioners further confirmed their bond with S.M.G., and detailed how they provide for S.M.G.'s daily needs. N.T., 7/8/20, at 5-11, 17-18, 28-34; N.T., 2/11/20, at 105-06.

Moreover, we observe that Father's visitation remained supervised,[6] and, after the dependency case closed, he only had three visits between March

_____

[6] Importantly, Family Service Association Case Manager, MarySue Sack, testified that, at the time her services and involvement ceased, she did not recommend unsupervised visitation, indicating concerns related to drug use. N.T., 2/11/20, at 103-04, 119. Similarly, Ms. Homitz referenced visitation remaining supervised due to continuing concerns regarding drug use. *Id*. at 39.

and June 2019, followed by a final visit in September 2019.[7]  N.T., 7/8/20, at 23; N.T., 2/11/20, at 39, 135-38, 148, 152-53, 157, 162, 164, 175-78.  Further, Father admitted to not sending cards or gifts since his last visit in September 2019. N.T., 7/8/20, at 37-38.  L.B. indicated that, despite the absence, S.M.G. did not ask for Father.  *Id*. at 11-12.  L.B. observed that during visitation with the parents, S.M.G. instead gravitated to her.  *Id*. at 17-18.  L.B. expressed that S.M.G. had no bond with her parents would not even recognize them.  *Id*. at 17, 27.  L.B. stated, "No, I don't think she's bonded to them at all.  I don't even know if she would recognize them at this point."  *Id*. at 18.  Having observed numerous visitations, Ms. Sack opined that S.M.G. displayed more of a parental bond with Petitioners.  N.T., 2/11/20, at 106.

While Father may profess to love S.M.G., a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights.  *In re Z.P.*, *supra* at 1121.  At the time of the conclusion of the hearings, S.M.G. had been out of Father's care for over two years and is entitled to permanency and stability.  As we stated, a child's life "simply cannot be put

---

[7] After the dependency case closed, Father's visitation was left to the discretion of Petitioners.  N.T., 2/11/20, at 148.  As explained by J.G., "There was no schedule and there were no required visits.  There were occasional visits, up to our discretion. . . . ."  *Id*.  J.G. noted strain in the relationship between Petitioners and Mother and Father, particularly Father, as well as new criminal charges being filed against Father and continuing concerns with regard to drugs.  *Id*. at 136-38, 162.

on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *Id*. at 1125. Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d 847, 856 (Pa.Super. 2004) (citation omitted).

Accordingly, based upon our review of the certified record, we find no abuse of discretion, and affirm the decree of the orphans' court terminating Father's parental rights.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 05/11/2021